William KUNTZ, III, Plaintiff,

v.

**NEW YORK STATE BOARD
OF ELECTIONS, et al.,
Defendants.**

No. 1–92–CV–1251.

United States District Court,
N.D. New York.

April 23, 1996.

William Kuntz, III, Westport, NY, pro se.

New York State Bd. of Elections, Albany, NY, for Defendant Bd. of Elections; Patricia L. Murray, of counsel.

John M. McHugh, Washington, DC, pro se.

Todd D. Valentine, Albany, NY, for Defendant William M. Davis.

Cusick, Hacker & Murphy, Latham, NY, for Defendant William Powers; Jeffrey T. Buley, of counsel.

Madonna, Saxer, Anderson & Wolinsky, Plattsburgh, NY, for Defendants William LePage & The Agricultural & Industrial Fair of Clinton County; Edward W. Wayland, of counsel.

Fitzgerald, Morris, Baker & Firth P.C., Glens Falls, NY, for Defendants Clinton County & Clinton County Sheriff Russell J. Trombly & Deputy Sheriff Does 1, 2 & 3; Veronica Carrozza O'Dell, of counsel.

## MEMORANDUM DECISION & ORDER

McAVOY, Chief Judge.

Defendants New York State Board of Elections, Clinton County, Russell J. Trombley, Sheriff of Clinton County, Agricultural and Industrial Fair of Clinton County, and William LePage, Secretary and Manager of the Agricultural and Industrial Fair of Clinton County, joined, where applicable to them, by defendants John M. McHugh, William Powers, and William Davis, have all moved for either dismissal of, or summary judgment on, the various causes of action asserted in plaintiff's Amended Complaint.

## I. BACKGROUND

### A. Facts:

Plaintiff William Kuntz circulated petitions to be placed on the ballot as an independent candidate for the November 3, 1992 election for United States Representative for the 24th Congressional District of New York. As part of his drive to have his name placed on the ballot, plaintiff dispatched at least one campaign worker to the Clinton County Agricultural Fair to gather signatures on his petitions. Plaintiff's campaign worker was ultimately prevented from collecting signatures at the fair. Plaintiff nevertheless gathered what he believed were the requisite signatures and filed same with defendant New York State Board of Elections.

Ultimately, after a challenge to plaintiff's petitions mounted by defendant John M. McHugh (at the time a New York State Senator, who later won the election in question), defendant New York State Board of Elections declared plaintiff ineligible for placement on the ballot because he lacked the requisite signatures required by Section 6–142 of N.Y. Election Law. This ill-starred attempted candidacy has spawned various litigations in both federal and state court.[1] Plaintiff filed his original Complaint initiating the instant matter in the District Court for the District of Columbia. That court

---

1. Plaintiff's petitions were declared invalid both post-hearing by the New York State Board of Elections and by a proceeding in Albany County Supreme Court, Index No. 6284–92 (10/25/92); See also, Kuntz v. Constantine et al., dkt. No. 92– cv–989 (N.D.N.Y.1992) (dismissing plaintiff's § 1983 action seeking an injunction against defendants from obstructing circulation of his petitions), aff'd by unpub. op., dkt. no. 92–9192, 999 F.2d 537 (2d Cir.1993).

promptly *sua sponte* transferred the matter to this Court where venue was proper.

## B.  Procedural History:

Plaintiff's initial Complaint in this matter contained three causes of action and named as defendants the New York State Board of Elections and Jane or John Doe 1 through 99.  Plaintiff brought in, or attempted to bring in, numerous defendants as the action proceeded.

The initial first cause of action challenged the constitutionality of several provisions of N.Y. Election law, specifically, N.Y. Election Law § 6–136(2)(g) and § 6–142(2)(e).  Plaintiff claimed that by requiring an independent candidate to obtain 3500 signatures, while requiring that a "party affiliated" candidate obtain only 625 signatures, these provisions violated the United States' Constitution.

This first cause of action was fully briefed by the parties and in a decision delivered from the bench on November 8, 1993, that cause of action was dismissed, with prejudice, for failure to state a claim upon which relief could be granted.

Plaintiff's second cause of action contended that "certain defendants" may have violated certain unspecified provisions of New York's Election Law by running in the contested election under both a "party nomination", and as an independent candidate.  Plaintiff, however, failed to specify any legal or equitable basis for his claim, and further failed to allege any federal basis.  Nevertheless, mindful of plaintiff's *pro se* status and the complexity of election law, and concerned that plaintiff's allegation that "one or more of the candidates" may have committed an unspecified transgression, might conceal a colorable claim, the Court expressly noted that plaintiff could amend *his second cause of action.*

Finally, plaintiff's third cause of action alleged that certain defendants, acting under color of state law, interfered with his right to freely associate and to collect the signatures necessary to be placed on the ballot.  Once again, this third claim failed to give reasonable notice to any defendant of the nature of plaintiff's claims against him or her.  Therefore, the Court also dismissed this third cause of action for failure to state a claim, but again granted plaintiff a limited leave to amend the claim.  The Court was careful at all times to expressly limit its leave to amend to plaintiff's initial second and third causes of action.[2]

## C.  Plaintiff's Amended Complaint:

■  Given plaintiff's election-related claims' already lengthy litigation history, and the substantial time and expense incurred by all defendant's in answering and moving against plaintiff's first inadequately drafted Complaint,[3] the Court was careful to grant plaintiff "leave to amend his complaint, but *only with regard to the second, and third causes of action.*"  (Tr. of Decision, Nov. 8th, 1993) (emphasis added).  The scope of plaintiff's amendment was restricted in light of the borderline frivolousness and facial inadequacy of his earlier Complaint, coupled with his propensity to file numerous and voluminous, but often immaterial and ultimately meritless, exhibits, affidavits and responses to defendants' motions.[4]  Such unwieldy filings place a heavy burden on both the responding defendants and judicial resources and the Court acts well within its discretion in placing such limitations on amendments made by its leave.  *See Spampinato v. M. Breger & Co.,* 176 F.Supp. 149, 151 (E.D.N.Y. 1958) (amendment permitted upon condition that plaintiff withdraw 34 paragraphs concerning previously adjudicated claims), *affirmed on other grounds,* 270 F.2d 46 (2d Cir.), *cert. denied,* 361 U.S. 944, 80 S.Ct. 409,

---

2.  Plaintiff later sought leave to further amend his already Amended Complaint.  That leave was denied by Magistrate Judge David N. Hurd on February 16, 1996.  Plaintiff never appealed that denial to this Court.

3.  Several defendants went so far as to request sanctions against plaintiff based on the inadequacies of his first Complaint.  Although it was a

close question, the Court ultimately denied those motions for sanctions in light of plaintiff's *pro se* status.

4.  In the course of this action plaintiff has filed well over a thousand pages of documents with the Court.

4 L.Ed.2d 363 (1959); *see also,* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, Vol. 6, § 1486 (1990) ("A number of courts have concluded that [Fed.R.Civ.P. 15(a) ] gives them authority to impose conditions when permission to amend is allowed.").

Plaintiff's Amended Complaint completely disregards the Court's express restrictions. Plaintiff has taken the Court's leave to amend two of the three causes of action in his initial, three-page Complaint and used it to expand his claims into five causes of action asserted in a seventeen-page Amended Complaint. While plaintiff's first and third amended causes of action appear to be attempts to cure the defects in his initial Complaint's first and second causes of action (*i.e.* those that plaintiff was given leave to re-plead) his amended second, fourth and fifth causes of action appear to proceed on entirely new factual allegations and legal bases and clearly exceed the mandated scope of the Court's leave to amend. Furthermore, the Court's examination of those portions of plaintiff's amended pleading which exceed the permissible scope of amendment reveals the presence of many of the vices that the Court sought to avoid by expressly restricting plaintiff's leave to amend. Plaintiff's causes of action are extremely dense and larded with extraneous factual detail that provide no basis for claims against the defendants charged therein. Plaintiff's legal bases are as thin as his factual averments are padded: he relies primarily on amorphous and conclusorily alleged Due Process violations to support his claims.[5] Plaintiff has further seen fit to add numerous defendants to his amended action, including the New York State Senate (with absolutely no basis) and nine "John Does."

Such disregard of the Court's prior order provides a sound basis for dismissal of these overreaching amendments. *See Maddox v. Shroyer,* 302 F.2d 903, 904 (D.C.Cir.) (Dismissal of Complaint "amply justified ... in view of flagrant refusal of appellant to follow sound and proper directions of the District Court."), *cert. denied,* 371 U.S. 825, 83 S.Ct. 45, 9 L.Ed.2d 64 (1962); *cf., Mylan Laboratories v. Pharmaceutical Basics,* 808 F.Supp. 446, 450–52 (D.Md.1992) (dismissing several amended claims asserting previously rejected theory of liability in violation of Court's previous order), *rev'd on other grounds,* 7 F.3d 1130 (4th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

Because plaintiff's Amended Complaint far exceeds the scope of the Court's permission to amend, and because that excess appears in large measure to be at worst frivolous and at best unfairly onerous and burdensome for the numerous defendants to respond to,[6] the Court hereby dismisses all of plaintiff's Amended Complaint but his first and third cause of action—*i.e.* those amendments expressly contemplated and permitted by the Court's earlier order. The dismissed claims will be treated as struck from the Complaint

---

5. By way of example, plaintiff's second cause of action attempts to allege, in excruciating detail, a claim under 42 U.S.C. § 1983. Plaintiff's factual allegations, however, allege that the various defendants did no more than challenge plaintiff's petitions, (which challenge was undertaken by an Order to Show Cause issued by the New York State Supreme Court), using their state government offices and telephones to do so. There appears to be no federal basis for such allegations, except to the extent that plaintiff alleges some form of Due Process defect in the state judicial proceedings which resulted in the invalidation of his petitions. Of course this Court has no jurisdiction to review those final state court proceedings. This cause of action also seeks to draw a § 1983 violation from defendant McHugh's actions, as a state senator, in voting for the passage of certain laws. Among other relief sought, plaintiff seeks to have this Court nullify the results of the contested election and remove defendant John McHugh from his elected office as a United States Representative (Cmplt., p. 3). Even the most minimal legal research would have revealed that such relief is unavailable from this Court.

6. The Court notes also that plaintiff's attempts at proper service appear to generally suffer from numerous defects. Coupled with plaintiff's proclivity for precipitously seeking default judgments (including a motion for default judgments against the "John Does" named in his Complaint) these defects have significantly added to the vexatious and burdensome nature of plaintiff's action. *See, i.e.* Deft. Bd. of Elections Memo of Law filed 2/13/96, p. 2; O'Dell Aff. of 2/12/96, ¶¶ 6–7; *see also, Kuntz v. Board of Elections,* 1995 WL 311759 (N.D.N.Y. May 8, 1995) (this case, denying plaintiff's Motion for Default Judgment against defendant Davis and numerous John Doe Defendants).

as immaterial in light of the Court's earlier rulings, *see* Fed.R.Civ.P. 12(f) (Upon motion made by a party ... or upon the court's own initiative at any time, the court may order stricken from any pleading any ... immaterial ... matter), and the Court will proceed to consider plaintiff's permissibly amended causes of action in light of the defendants' various motions.[7]

## II. ANALYSIS

### A. Plaintiff's First Amended Cause of Action:

Defendants Clinton County, Russell J. Trombley, Sheriff of Clinton County, Agricultural and Industrial Fair of Clinton County, and William LePage, Secretary and Manager of the Agricultural and Industrial Fair of Clinton County have all moved for summary judgment on plaintiff's first cause of action,[8] which alleges that these defendants interfered with plaintiff's exercise of his rights under the First Amendment.[9]

As indicated *supra,* during plaintiff's bid to mount an independent candidacy for United States Representative for the 24th Congressional District, plaintiff sent a campaign worker, Mr. Robert Piekarski, to the 1992 Clinton County Agricultural and Industrial Fair ("Fair"), to collect signatures for his nomination petition. While Piekarski moved through the crowd soliciting signatures, Defendant LePage received a complaint regarding Mr. Piekarski's activities. He then sent defendant sheriff's deputies to escort Mr. Piekarski off the fairgrounds and refunded his admission fee.

Mr. Kuntz claims, and the Defendants do not dispute, that he has a constitutionally protected right under the First Amendment to engage in political activities. The dispute

thus centers on whether these defendants violated Mr. Kuntz' First Amendment rights by prohibiting his campaign worker from soliciting signatures at the County Fair. Defendants claim that they have not violated plaintiff's rights and, therefore, summary judgment in their favor may properly issue.

### 1. The Standard for Summary Judgment:

■ Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand,* 807 F.2d 44 (3d Cir.1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). It is with these considerations in mind that the court addresses defendants' motions for summary judgment.

### 2. The Standard Applied:

Defendants assert that their actions were permissibly undertaken pursuant to a constitutionally valid "booth rule," which placed reasonable restrictions on plaintiff's exercise of his First Amendment rights.[10] Defen-

---

**7.** Defendant New York State Board of Elections, joined by defendants Powers, Davis and McHugh, have moved for summary judgment against plaintiff's impermissible claims. In light of the foregoing conclusions the Court need not reach those motions.

**8.** Defendants Powers, Davis and McHugh also join these motions, to the extent that plaintiff's first cause of action relates to them.

**9.** Plaintiff's first cause of action is filled with extraneous factual allegations and legal conclu-

sions—the following analysis examines the only colorable claim the Court perceives. To the extent that plaintiff, in other filings with the Court, makes reference to claims sounding in defamation or to some other unspecified First Amendment infringement, such claims are absolutely without support in the record and completely without legal merit.

**10.** These defendants also argue that the Court lacks personal jurisdiction, that they are not state actors, that plaintiff has failed to establish any causally related damages, and that the Clinton

dants' assertions in this regard are fully supported by appended exhibits pointing to various portions of plaintiff's own deposition testimony and the affidavit of defendant William LePage (LePage Notice of Motion at 1–5). Plaintiff's attempts to controvert defendants' showing as to the content and application to plaintiff of defendants' booth rule fails to raise any material question of fact.

LePage's affidavit, made on his personal knowledge, sets forth a full description of the Fair's booth rule as applied by the Fair since 1976. (LePage Aff., ¶¶ 10, 12, 15, discussed more fully *infra* ). Further, LePage asserts that plaintiff called him prior to the Fair's opening, and that LePage advised him as to the rule's parameters, specifically, that booths were required for all solicitations and that booths were still available. (LePage Aff., ¶ 11). LePage further advises that plaintiff never followed up on renting a booth (Id.). Finally, LePage describes the essentially undisputed events of the day when Pieraski was escorted from the Fair's premises (LePage Aff., ¶ 13).

■ By way of contrast to LePage's affidavit, plaintiff makes only one assertion in his affidavit in opposition that can be read to contradict LePage's version of events: *"upon information and belief,* Mr. LePage advised plaintiff that there were no booths [11] available, and that, plaintiff believes offered plaintiff space 'out beyond the House barns' in jest." (Kuntz Aff. filed Feb. 27, 1996, ¶ 17) (emphasis added). This alleged refusal to rent plaintiff a booth is the only colorably disputed material raised by plaintiff. Indeed the gravamen of plaintiff's amended first cause of action is "that Clinton County *has* a booth rule, or that said Rule restricts solicitation of voter signatures and even if there is such a rule, it is invalid as applied to plaintiff." (Pltff. L.R. 7.1(f) Statement) (emphasis added). In significant and telling contrast to

the rest of the assertions offered on personal knowledge in plaintiff's 27 paragraph affidavit in opposition, however, only plaintiff's assertion that he was denied a booth is styled as offered "on information and belief." Of course by Rule 56's plain terms, an assertion by affidavit in that form is insufficient to raise a material question of fact so as to defeat a properly supported motion for summary judgment. *See* Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge"). Nor does it appear coincidental that plaintiff, who notwithstanding his *pro se* status has demonstrated an ability to closely read the Federal Rules of Civil Procedure, couches only this assertion in such language; this assertion in the main contradicts plaintiff's sworn deposition testimony:

A. Well, basically I asked about renting a booth and he said that "there weren't any or that you could have one out behind the horse tent," or something to that effect.

\* \* \* \* \* \*

Q. Can you tell me what he said regarding their requirements?

A. No.

Q. You have no recollection as you sit here today?

A. No and I don't think it even came up.

Q. You said you "weren't concerned about their requirements"?

A. Correct ... Because I really don't care much about what the rules of the County Fair Board are when you're circulating a petition for a congressional office.

\* \* \* \* \* \*

Q. Do you recall what information [Mr. Madonna] conveyed to you, other than what you just relayed?

---

County Sheriff is protected by Qualified Immunity. In light of the Court's substantive determination on the First Amendment issues defendants other arguments need not be reached.

11. Whether or not plaintiff was offered a booth is virtually the only fact plaintiff colorably attempts to cast in dispute. The Court addresses the question because, although not expressly argued by plaintiff, a denial to him of the *opportunity* to

rent a booth might tend to support an infringement claim. Even if plaintiff was denied a booth, however, given the undisputed, eve-of-the-Fair timing of his first inquiry, and the constitutionally permissible "first-come, first-served" operation of the rule, a denial would not necessarily establish either that the Fair had no such rule, or, that the application to plaintiff infringed his rights.

A. No, not particularly.

(O'Dell Aff., Ex. D., pp. 30–34, 46).

In light of plaintiff's own deposition testimony, and in the complete absence of evidence contravening LePage's sworn affidavit, plaintiff has failed to demonstrate any material question of fact regarding either the existence or content of the Fair's booth rule or the events leading up to the ejection of plaintiff's campaign worker. Since plaintiff has failed to raise even a metaphysical doubt as to the rule's existence, content, or application in this instance, the only remaining issue is a question of law: is the Fair's booth rule, as described and applied, constitutionally valid?

### 3. The Constitutionality of Defendants' Booth Rule:

■ In their statement in support of their motion for summary judgment, the defendants allege that "[t]he Agricultural and Industrial Fair of Clinton County, Inc. established in 1976 a 'booth rule' which requires all political, charitable, religious, commercial or other vendors to conduct any solicitation at the Fair from booths rented for that purpose." (L.R. 7.1(f) Statement, ¶ 3). The Supreme Court defined the constitutionally permissible limits of booth rules in the 1981 case of *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). The *Heffron* Court stated that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired," *Id.*, at 647, 101 S.Ct. at 2564 (citations omitted), and held that activities protected by the First Amendment "are subject to reasonable time, place, and manner restrictions." *Id.* The *Heffron* 'Court considered three factors in assessing the reasonableness of rules restricting the exercise of First Amendment rights: (i) Was the rule "justified without reference to the content of the regulated speech;" (ii) Did the rule "serve a significant governmental interest;" and (iii) Did the rule "leave open ample alternative channels for communication of the information." *Id.*, at 648, 101 S.Ct. at 2564.

#### a. *Heffron* Applied:

##### i. Does Clinton County's Booth Rule Discriminate on the Basis of the Content or Subject Matter of Speech?

■ In order to be valid, a rule restricting the exercise of activities protected by the First Amendment must be content neutral. Defendants allege that the County Fair's booth rule applies to "all political, charitable, religious, commercial or other vendors" who seek to "conduct any solicitation." (L.R. 7.1(f) Statement, ¶ 3). Defendants further assert, via the uncontroverted affidavit of Fair Manager LePage, that "[b]ooths were distributed on a straightforward first-come, first-served basis to all comers and one was expressly offered to plaintiff." (LePage Aff. ¶ 6).

As characterized by defendants, and uncontradicted in any form by plaintiff, Clinton County's booth rule clearly satisfies the "content-neutrality" prong of the *Heffron* test. Indeed, Clinton County's rule is nearly identical to the Minnesota booth rule upheld in *Heffron*. First, like the rule in *Heffron*, Clinton County's rule does not discriminate against certain kinds of speech, but "applies evenhandedly to all who wish to distribute and sell written materials or to solicit funds." *Heffron*, 452 U.S. at 649, 101 S.Ct. at 2564. Second, like the Minnesota rule, the "method of allocating space is a straightforward first-come, first-served system." *Id.* In *Heffron*, the Supreme Court expressly approved the "first-come, first-served" system of allocation on the grounds that such a system avoided the danger of "more covert forms of discrimination that may result when arbitrary discretion is vested in some governmental authority." *Id.*[12]

##### ii. Does Clinton County's Booth Rule Serve a Significant Governmental Interest?

The Second Circuit has held that although a rule restricting the exercise of First Amendment activities "must be narrowly tailored to serve a significant governmental in-

---

**12.** Assuming that the space made available to plaintiff was less desirable than other spots (a proposition for which no support is offered), this is perfectly consistent with all parties' agreement that plaintiff made his inquiry at the last minute on the eve of the fair's opening.

terest, it need not be the least restrictive or least intrusive means of serving that interest. Rather, it simply must promote a substantial governmental interest that would be achieved less effectively without the rule." *Paulsen v. Gotbaum,* 982 F.2d 825, 829 (2nd Cir.1992).

Defendants assert two justifications in support of the validity of the Clinton County Fair booth rule. First, they assert "an interest in maintaining the orderly flow of pedestrian traffic." Second, they assert an "interest in preventing fraud, duress or harassment in the solicitation of Fair patrons ... by confining such solicitation-type activities to booths in certain areas [where] sheriff deputies could more easily monitor the situation." (LePage et al., Memo. of Law, p. 7). Defendants' uncontroverted interests are identical to those asserted by Minnesota fair officials in *Heffron.* In that case, the Supreme Court established that "[a]s a general matter ... a State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective." *Heffron,* 452 U.S. at 650, 101 S.Ct. at 2565. The Court also indicated that a forum's "special attributes," and the "nature and function of the particular forum involved" were relevant to determining the significance of the asserted interest. *Id.,* at 650–51, 101 S.Ct. at 2565. In particular, the Court distinguished fairgrounds from city streets, observing that "[t]he flow of the crowd and demands of safety are more pressing in the context of the Fair," which "is a temporary event attracting great numbers of visitors." *Id.* Finally, the Court noted that without the rule, "there would be a much larger threat to the State's interest in crowd control." *Id.* at 653, 101 S.Ct. at 653. Since the government interests plausibly asserted by the defendants are nearly identical to those which the Supreme Court considered and approved of in *Heffron,* it is clear that the defendants satisfy the requirement "that a place or manner restriction must serve a substantial state interest." *Id.* at 654, 101 S.Ct. at 2567.

*iii. Did the rule leave open alternative channels for communication of the information?*

■ "[T]o be valid as a place and manner restriction, it must ... be sufficiently clear that alternative forums for the expression of respondents' protected speech exist despite the effects of the Rule." *Heffron,* 452 U.S. at 654, 101 S.Ct. at 2567. Again noting the resemblance of Clinton County's booth rule to that of the Minnesota Fair rule upheld in *Heffron,* there is little doubt that Clinton County's rule meets this requirement. First, the rule did not ban plaintiff from soliciting signatures "anywhere outside the fairgrounds," nor did it prevent him from soliciting signatures *within* the fairgrounds, provided that he rented a booth. *Id.* at 655, 101 S.Ct. at 2567. Defendants also note that plaintiff's campaign workers "could have mingled with the crowd orally urging them to adopt his views." (LePage et al., Memo. of Law, p. 9).

*iv. Conclusion:*

As the Supreme Court noted in *Heffron,* "[t]he First Amendment protects the right of every citizen to 'reach the minds of willing listeners and to do so there must be an opportunity to win their attention.'" *Heffron,* 452 U.S. at 655, 101 S.Ct. at 2568. Nevertheless, reasonable restrictions can be imposed on the exercise of First Amendment activities in the furtherance of substantial countervailing government interests. The foregoing analysis compels the conclusion that Clinton County's booth rule is a reasonable restriction on the exercise of First Amendment activities. First, the rule is content neutral and is applied evenhandedly. Second, the rule furthers the substantial government interest in safety and crowd control. Third, the rule leaves open ample alternative forums in which plaintiff could carry on his protected activities.

Because there is no material question of fact in dispute, and because plaintiff's deposition testimony and defendants' affidavits, exhibits, and memoranda of law establish that no violation of plaintiff's First Amendment rights occurred as a result of any defendants' actions, defendants' Motion for Summary Judgment on plaintiff's amended first cause of action is GRANTED, and that cause of action is DISMISSED.

### b. Plaintiff's Third Amended Cause of Action:

The gravamen of plaintiff's third amended cause of action is identical to that of his original second cause of action: that defendant McHugh (with the assistance of McHugh Independent Petition Does 1, 2 and 3) circulated petitions for an independent McHugh candidacy at a time when "defendants had already known that defendant McHugh was going into the primary [against an opponent] as republican candidates." Cmplt: ¶ 75. Unfortunately, plaintiff's claim as amended suffers from the same deficiency it evidenced as initially drawn: it fails to provide any basis from which the Court can identify a claim upon which relief could be granted.[13]

Assuming all plaintiff's factual allegations are true (as the Court must when contemplating dismissal under Rule 12(b)(6)), and that defendant McHugh did in fact circulate petitions as both the Republican Party candidate and as an independent candidate of his Voters' Rights Party, the Court nevertheless finds that plaintiff has failed to allege, and the Court can conceive of, no statutory, legal or equitable prohibition against such "dual track" petitioning (as plaintiff styles it). In short then, plaintiff fails to allege any basis for his assertion that McHugh's (or any other defendants') conduct in this regard is actionable. As a basis for relief plaintiff asserts only that:

78. By allowing a party candidate to harbor also an independent candidacy is improper and should be declared null and void by the Court when applied to federal office holders.

79. That accordingly, plaintiff prays that the Court grant judgment declaring the "dual track" candidacy evidenced by the McHugh Republican and Right to Vote candidacy as repugnant and hence unlawful.

(Cmplt. at ¶¶ 78–79).

Conclusory terms such as "improper," "unlawful" and "repugnant" are simply insufficient to place defendants on notice of the violations of law, or of plaintiff's rights, plaintiff has twice attempted to assert against them.

Plaintiff's failure to state the *legal* nature of his claims against these defendants aside, plaintiff also fails to allege any sufficient injury *in fact* suffered by him and attributable to these defendants. The closest plaintiff comes to asserting *any* injury is that:

76. [Defendants acted] with the knowledge that the second 'independent' petition, while political safe harbor for defendant McHugh, would deplete the available numbers of registered voters for other candidates. As the time for the Republican petitions came first in time, the independent petition would thus draw down and reduce that pool available to persons such as plaintiff.[14]

(Cmplt. at ¶ 76).

Once again, even assuming that the pool of signatories available to "persons such as

---

13. While defendants McHugh and McHugh petition Does 1, 2 and 3 have not yet moved for dismissal on the amended cause of action, the Court finds that this cause of action presents those rare circumstances wherein *sua sponte* consideration under Fed.R.Civ.P. 12(b)(6) is appropriate. *See Perez v. Ortiz,* 849 F.2d 793, 797 (2d Cir.1988) (district court has no authority to dismiss for failure to state a claim without affording plaintiff the opportunity to be heard) (citations omitted).

The gravamen of plaintiff's claim (stated in almost identical terms) has already been fully briefed and considered in the motions filed against plaintiff's initial Complaint: plaintiff was afforded a full opportunity to be heard regarding this claim at that time and in dismissing with leave to amend, the Court brought to plaintiff's attention the same pleading defects which persist in his amended claim. Therefore, plaintiff *has* been fully heard on this issue and the Court's previous leave to amend provided plaintiff a second, post-motion opportunity to address the issue. Indeed, plaintiff inappropriately takes the opportunity, *within* his amended Complaint, to respond to many of the arguments which were earlier raised in opposition to this cause of action. (Cmplt. at ¶¶ 74, 75, 77) (*i.e.* "74. As set forth in prior proceedings before this court, the defendant New York State Board of Elections has made the point that there are a very large pool of voters who are neither registered Democrats or Republicans.")

14. These allegations must also be read in light of the fact that plaintiff did in fact collect and submit what he believed were a sufficient number of signatures: his petitions foundered on the New York State Board of Elections determina-

plaintiff" was marginally reduced by defendant McHugh's petitioning as both a party and an independent candidate, the Court finds that such an amorphous and insubstantial assertion of injury will not give rise to a cognizable federal claim. *See Hotel Syracuse, Inc. v. Young*, 805 F.Supp. 1073, 1081 (N.D.N.Y.1992) (quoting *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1180 (7th Cir. 1989)) (Under "substantiality doctrine," court is required to "dismiss a complaint seeking recovery under the Constitution or laws of the United States if the alleged federal claim either 'clearly appears to be immaterial and solely made for the purpose of obtaining jurisdiction or where such a claim is *wholly and insubstantial and frivolous.*'") (emphasis added) (citations omitted).

Because even as amended plaintiff's third cause of action fails to state a claim upon which relief can be granted, that cause of action is hereby dismissed under Fed. R.Civ.P. 12(b)(6), with prejudice.

### III. CONCLUSION

By way of summary, then, plaintiff's second, third, fourth and fifth amended causes of action are DISMISSED with prejudice; defendants' Motion for Summary Judgment on plaintiff's first amended cause of action is GRANTED.

Because the foregoing disposes of all of plaintiff's causes of action, plaintiff's Amended Complaint is, in its entirety, DISMISSED.

**IT IS SO ORDERED.**

tion that his petitions lacked sufficient *valid* signatures.