**In re COMMERCIAL FINANCIAL SERVICES, INC., and CF/SPC NGU, Inc., Debtors.**

Bankruptcy Nos. 98–05162–R, 98–05166–R.

United States Bankruptcy Court, N.D. Oklahoma.

Aug. 31, 1999.

Larry M. Wolfson, Jenner & Block, Chicago, IL, Neal Tomlins, Tomlins & Goins, Tulsa, OK, for debtor.

William Kuntz, III, movant pro se.

Katherine Vance, Assistant U.S. Trustee, Tulsa, OK, U.S. Trustee.

## ORDER STRIKING PLEADINGS FOR LACK OF STANDING

DANA L. RASURE, Bankruptcy Judge.

Before the Court is the Court's Order to Appear and Show Cause Why Pleadings Should Not Be Stricken for Lack of Standing which was issued to William Kuntz III ("Kuntz") on July 13, 1999 (the "Show Cause Order"). The Show Cause Order set forth the numerous objections and appeals filed by Kuntz in this complex bankruptcy case.[1] Kuntz's filings have required attention by the Court, the Clerk of the Court, the appellate panels, and counsel for Commercial Financial Services, Inc. ("CFS") and various other parties in interest. When CFS informed the Court that its records did not evidence any possible claim by Kuntz against the estate, the Court issued the Show Cause Order requiring Kuntz to appear before the Court and show cause why pending and future requests for relief and objections filed by or on behalf of Kuntz should not be stricken for lack of standing.

A hearing was held on August 24, 1999, at which Kuntz appeared *pro se.* Kuntz was given an opportunity to present evidence and argument regarding his standing to appear and be heard in this bankruptcy case. Kuntz presented his own testimony and offered no exhibits, choosing to rely upon the Affidavit of William Kuntz III offering Satisfaction to the Court's Order of July 13, 1999 *Sua Sponte* Inquiring into the Standing of Affiant [sic] (the "Kuntz Affidavit"), which he filed herein on July 28, 1999.[2] Neal Tomlins, counsel for CFS, cross-examined Kuntz and elicited testimony from Caroline Benediktson, general counsel for CFS, and Lana Ham, accounts payable manager of CFS. The Kuntz Affidavit was admitted into evidence at the request of CFS.

Having considered the pleadings, the evidence presented and the applicable law, the Court finds and concludes as follows:

### Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334 and 157(a) and (b)(2)(A) and (B). Further, because a federal court has the inherent power to determine whether it may exercise jurisdiction in any particular matter, this Court has jurisdiction to determine Kuntz's standing under federal constitutional principles and under the Bankruptcy Code. *See Stoll v. Gottlieb,* 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938), *citing Texas & Pac. R. Co. v. Gulf R. Co.,* 270 U.S. 266, 274, 46 S.Ct. 263, 265, 70 L.Ed. 578 (1926) ("[e]very court of general jurisdiction has power

---

1. As of July 13, 1999, the date of the Show Cause Order, Kuntz had filed nineteen separate pleadings in this case. Since that date, Kuntz has filed ten additional pleadings.

2. The Kuntz Affidavit alleged a claim for "dual track collection" which "upon information and belief, violates and violated the Fair Credit Laws, and would entitled Affiant to file a Proof of Claim in the amount of at least $1,000." CFS Exhibit 1, p. 3, ¶ 10. The Kuntz Affidavit includes four attachments: (1) an internet printout of an article from the Washington Post entitled *Clifford, Altman Settle BCCI Case;* (2) a letter dated February 7, 1997 to Kuntz from CFS advising that Kuntz's account was purchased by an affiliate of CFS, that CFS was servicing the account, and that Kuntz should remit payment to the CFS affiliate's lockbox account; (3) an Information Subpoena issued by counsel for Key Bank dated September 17, 1997; (4) a Notice of Motion and Motion to Quash Informational Subpoena and Vacate Judgment, filed by Kuntz in Essex County, New York, Supreme Court, dated October 10, 1997, to which is attached (a) the motion; (b) the Affidavit of Defendant William Kuntz, III; (c) a receipt for payment of $4.00 to the Essex County Clerk; (d) a docket sheet in the case of *Key Bank v. William Kuntz, III,* as of June 10, 1997; (e) an illegible copy of a "Phone Message" slip; (f) a Receipt for Certified Mail showing payment of $1.67 for postage bearing postmark date of June 10, 1997, to Commercial Financial (not a green card indicating receipt by CFS); (g) handwritten and typewritten notes dated "9 AM Thursday Sept 25, 1997"; and (h) a coverpage and an eight page article from the September 1997 issue of *Inc.* magazine entitled *Man You've Never Heard Of,* featuring CFS founder William Bartmann and the history of CFS.

to determine whether the conditions essential to its exercise exist."). Although this Court's jurisdiction is limited by the constitution and Congress, the Court has jurisdiction "to interpret the language of the jurisdictional instrument and its application to an issue before the court," even if this Court otherwise does not have jurisdiction to resolve the complaints and objections of Kuntz. *Stoll*, 305 U.S. at 171, 59 S.Ct. at 137.

### Findings of fact

Under the Show Cause Order, Kuntz had the burden of coming forward with *facts* that would establish that he has standing to participate in this case, that is, that he has a legally cognizable interest in the outcome of these bankruptcy proceedings. Kuntz presented his version of the facts in support of his contention that he has standing; cross-examination of Kuntz by CFS elicited additional facts. CFS also presented additional testimony that was not contradicted by Kuntz.

For the purpose of determining standing, the Court must view Kuntz's allegations of fact (as opposed to his legal conclusions) and the contents of CFS Exhibit 1 as true, as well as construe disputed facts in the light most favorable to Kuntz. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). It was within the Court's power to require Kuntz to supply particularized allegations of fact that he deemed supportive of his standing. *Id.* at 501, 95 S.Ct. at 2206–07. If, after this opportunity, it does not adequately appear from all materials of record that standing exists, the Court may strike Kuntz's pleadings. *See id.* at 502, 95 S.Ct. at 2207.

From the testimony and the exhibit, the Court finds that in the early 1990's, Kuntz had a credit card account with First American Bank (the "Account"). First American Bank was seized by federal regulators and Kuntz's Account was sold to Key Bank. Kuntz defaulted on the Account and in 1993, Kuntz was sued by Key Bank in New York. On May 24, 1996, Key Bank obtained a judgment against Kuntz (the "Judgment").

In late 1996 or early 1997, the Account was sold to CFS.[3] CFS contacted Kuntz by letter on February 7, 1997. The letter advised Kuntz that his Account had been purchased by TAPR VII Ltd. Partnership (TAPR) and that CFS would be servicing the Account. The letter instructed Kuntz to send payments to TAPR, at a Tulsa post office box, rather than to Key Bank. The letter contained disclosures required by the Fair Debt Collection Practices Act regarding Kuntz's right to dispute the debt, or any portion thereof. In June 1997, Kuntz sent a letter to CFS apparently advising CFS of the Key Bank litigation. The contents of the June 1997 letter are not in evidence. CFS contends that it stopped all collection action at that time. Between March and September 1997, there *may* have been some telephone conversations between Kuntz and CFS employees, some of which may have been instigated by Kuntz. There is no evidence as to what may have been discussed.

Kuntz testified that in a telephone conversation on or about September 25, 1997, he was advised by "Wayne" or "Duane" at CFS that CFS "was selling" the Account back to Key Bank. It is undisputed that CFS made no further collection efforts after that telephone conversation.[4]

On September 17, 1997, an Information Subpoena was issued by Harold Goldberg, counsel for Key Bank. *See* Attachment 3, CFS Exhibit 1. The subpoena, issued in

---

3. Caroline Benediktson testified that CFS acquired Kuntz's account from Key Bank in December 1996. Kuntz testified that he first received notice of the sale of his Account to the CFS affiliate (TAPR VII Limited Partnership) in February 1997.

4. CFS records indicated no further activity. Kuntz could not recall any further contact.

the Supreme Court of the County of Essex, New York, referred to the Judgment and instructed Kuntz to answer a questionnaire within seven days from service and return the completed questionnaire to Goldberg. The Court assumes that information sought concerned Kuntz's assets for collection purposes.[5]

On or about October 10, 1997, Kuntz filed a Motion to Quash Informational Subpoena and Vacate Judgment (the "Motion to Quash") in the Supreme Court of the County of Essex, claiming that CFS was the owner of the Account, that Key Bank had no authority to serve the Informational Subpoena, and that Key Bank violated the "Fair Billing Act and /or Fair Credit Collection Act under federal law." *See* CFS Exhibit 1, Attachment 4. In the Affidavit accompanying the Motion to Quash, Kuntz contended that CFS had confirmed that it still owned the Account.

The basis for Kuntz's "claim" is that Key Bank attempted to collect the Judgment from him after the Account had been sold to CFS's affiliate—what Kuntz has termed "dual track collection." Kuntz could not articulate any law he believed was violated by CFS. He admitted that he did not know "if there was anything CFS did that was wrongful." Kuntz did not commence any legal or administrative proceeding against CFS prior to the bankruptcy.

CFS presented the testimony of Caroline Benediktson, general counsel of CFS. Her uncontroverted testimony was that CFS acquired the Account in December 1996, began servicing the Account in February 1997, discontinued servicing the Account in June 1997, and sold the Account back to Key Bank in September 1997. The accounts payable manager of CFS also provided uncontroverted testimony that CFS had no account payable in Kuntz's name.[6]

## Conclusions of law

■■■■ "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 497, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). One purpose of standing is to prevent a flood of litigation by those who have only an ideological stake in the outcome of a proceeding. *See United States v. Richardson,* 418 U.S. 166, 192, 94 S.Ct. 2940, 2954, 41 L.Ed.2d 678 (1974). The Supreme Court has defined standing in this way—

> In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or . actual injury resulting from the putatively illegal action[.]'

*Warth v. Seldin,* 422 U.S. at 498–99, 95 S.Ct. at 2205 (citations omitted).

■■■■ Thus, the constitutional elements of standing consist of factual allegations (a) of

---

5. The questionnaire referred to in the Information Subpoena was not provided to this Court.

6. While the Court relates a summary of CFS's evidence for the record, the Court's decision would be the same without any evidence from CFS.

injury or threat of imminent injury, (b) that the injury is fairly traceable to the conduct complained of, and (c) that a favorable decision by the court would redress the injury. *See, e.g., Warth v. Seldin,* 422 U.S. at 501, 505, 95 S.Ct. at 2206, 2208 (1975).

■ Section 1109 of the Bankruptcy Code catalogs persons or entities who possess the right to be heard in a bankruptcy case. Section 1109(b) states:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b) ("Section 1109"). "Bankruptcy courts 'must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation.'" *Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.),* 998 F.2d 783, 788 (10th Cir.1993), *quoting In re Amatex Corp.,* 755 F.2d 1034, 1042 (3d Cir.1985).

■ "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted. The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing....'" *Warth v. Seldin,* 422 U.S. at 500, 95 S.Ct. at 2206 (citation omitted). In order to assert "creditor" status, Kuntz must show that he possessed some claim under a constitution, a statute, a contract, or the common law that may entitle him to relief.

■ Kuntz claims that he is a creditor of the estate. His claim rests on the allegations that CFS owned his Account in September 1997 and *Key Bank* instituted collection efforts in September 1997. Kuntz admits that he does not know whether CFS did anything wrong. Kuntz does not allege any concrete injury suffered by virtue of CFS's ownership of the Account, although he believes that he is entitled to "at least $1,000" from CFS's bankruptcy estate. Kuntz does not know what portion of the Fair Debt Collection Practices Act or any law may have been violated; he stated that he was not an expert on those matters and that "common sense" tells him that CFS should have notified him in writing rather than in a telephone call that Key Bank had repurchased the Account.[7]

---

7. The Court notes that although Kuntz appeared *pro se,* he has considerable knowledge of federal law. At the hearing, Kuntz objected to questions, required the admission of exhibits, effectively cross-examined witnesses, articulated arguments in favor of his positions, such as his theory as to why the Judgment was invalid, etc. In the pleadings filed with this Court, Kuntz liberally cites federal statutes and Bankruptcy Rules, and evidences a conversant knowledge of bankruptcy law and procedure, as well as appellate procedure.

Moreover, Kuntz has appeared and participated in many high-profile bankruptcy cases. He is listed as an active party *pro se* in published and unpublished decisions: *Kuntz v. DASU L.L.C. (In re Cray Computer Corp.),* 145 F.3d 1345 (Table), 1998 WL 229677 (10th Cir.1998); *Kuntz v. Cray Computer Corp. (In re Cray Computer Corp.),* 107 F.3d 880 (Table), 1997 WL 111264 (10th Cir.1997); *Kuntz v.* *Grand Union Co. (In re Grand Union Co.),* 106 F.3d 385 (Table) (3d Cir.1996); *Kuntz v. Saul, Ewing, Remick & Saul,* 200 B.R. 101 (D.Del. 1996) (Kuntz sanctioned for pursuing a frivolous appeal, notwithstanding his *pro se* status, because of Kuntz's extensive appellate experience—listing failed federal and *state* appeals); *Kuntz v. Cray Computer Corp. (In re Cray Computer Corp.),* 97 F.3d 1464 (Table), 1996 WL 547320 (10th Cir.1996); *Kuntz v. Pardo (In re W.T. Grant Co.),* 160 B.R. 35 (S.D.N.Y. 1993); *Kuntz v. Nova Vista Industries, Inc. (In re Nova Vista Industries, Inc.),* 1992 WL 60395 (S.D.N.Y.1992); *In re Adirondack Railway,* 1990 WL 124225 (N.D.N.Y.1990); *Ehre v. State of New York (In re Adirondack Railway),* 93 B.R. 867 (N.D.N.Y.1988); *In the Matter of W.T. Grant Co.,* 85 B.R. 250 (Bankr. S.D.N.Y.1988), *aff'd in part, reversed in part,* 119 B.R. 898 (S.D.N.Y.1990) (denial of Kuntz's request for fees and expenses); *In re One Westminister Co.,* 74 B.R. 37 (D.Del.

The undisputed facts indicate that Kuntz's complaint of "dual track collection" could have occurred, if at all, only for a few days during the month of September 1997. CFS's records indicate that CFS made no further contact with Kuntz after the September 1997 telephone call in which CFS informed Kuntz that CFS "was selling" the Account back to Key Bank. Kuntz himself does not recall any further contact from CFS after September 1997. There is no evidence that CFS owned the Account or attempted collection on the Account after September 1997. In fact, there is no evidence that CFS made any attempt to collect on the Account other than the February 7, 1997, letter.

Kuntz did not bring any legal or administrative action against CFS prior to the commencement of this bankruptcy case on December 11, 1998. The only law that the Court can imagine might address CFS's collection activity in this case is the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* The statute of limitations on a claim under the Fair Debt Collection Practices Act is one year. *See* 15 U.S.C. § 1692k. Thus, to the extent that these facts could be construed to state a claim against CFS under the Fair Debt Collection Practices Act, which the Court finds they do not, Kuntz would be barred from bringing the claim by virtue of the applicable statute of limitations.

Kuntz was summoned before the Court to affirmatively show that he had an interest in the estate sufficient to grant him standing to appear or otherwise participate in this case. Kuntz has failed to show that he has incurred any injury at the hands of CFS. Kuntz has failed to articulate, and the Court has not been able to ascertain, any legal theory under which CFS may be liable to him under the facts presented. Kuntz is not a creditor of the estate and has no other interest in the estate, and therefore is not a party in interest under Section 1109. Because Kuntz has no stake in the outcome of these proceedings, none of the decisions of this Court can affect any legal right or interest of Kuntz, favorably or unfavorably. Thus, Kuntz does not have standing to appear or be heard in these proceedings.

Because Kuntz has failed to establish standing to appear in this case, all pending

---

1987); *In the Matter of W.T. Grant Co.*, 4 B.R. 53 (Bankr.S.D.N.Y.1980).

Kuntz brought an action in connection with the fate of The Peter Kuntz Company, a company apparently founded by his grandfather, against six banks, an investment firm, and John and Jane Does 1–299, alleging a conspiracy to dismantle the company. *See Kuntz v. Shawmut Bank of Boston*, 1987 WL 11172 (S.D.N.Y.1987).

Kuntz also sued the New York State Senate, the New York State Board of Elections, various individuals, and numerous John and Jane Does, claiming constitutional violations in connection with Kuntz's attempt to run as an independent candidate for the United States House of Representatives in 1992. *See Kuntz v. New York State Board of Elections*, 924 F.Supp. 364 (N.D.N.Y.1996); *Kuntz v. New York State Senate*, 113 F.3d 326 (2d Cir.1997).

Kuntz has filed complaints against the New York Stock Exchange (motion for leave to appeal denied, 92 N.Y.2d 877, 677 N.Y.S.2d 782, 700 N.E.2d 321 (1998)); the Board of Governors of the Federal Reserve (*see* 1997 WL 150062 (D.C.Cir.1997)); the City of Dayton, Ohio (*see* 99 F.3d 1139 (Table), 1996 WL 607148 (6th Cir.1996)); the Department of Energy (1995); and the United States Postal Service (1993). Kuntz has also been to Tax Court, although not *pro se*. *See Kuntz v. Commissioner*, 64 T.C.M. (CCH) 1258, 1992 WL 317398 (1992).

Further, Kuntz has unsuccessfully petitioned to the United States Supreme Court for writs of certiorari in numerous cases, including *Kuntz v. Fadness*, 519 U.S. 966, 117 S.Ct. 390, 136 L.Ed.2d 306 (1996); *Kuntz v. Shawmut Bank of Boston*, 501 U.S. 1252, 111 S.Ct. 2892, 115 L.Ed.2d 1057 (1991); *Kuntz v. Manley, Burke and Fischer, L.P.A.*, 500 U.S. 918, 111 S.Ct. 2016, 114 L.Ed.2d 103 (1991); *Kuntz v. City of Dayton*, 499 U.S. 962, 111 S.Ct. 1588, 113 L.Ed.2d 652 (1991); *Kuntz v. Society Bank, N.A.*, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1055 (1991); *Kuntz v. Little Miami Railroad Co.*, 498 U.S. 1027, 111 S.Ct. 679, 112 L.Ed.2d 671 (1991); *Kuntz v. City of Dayton*, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989); *Kuntz v. Shawmut Bank of Boston*, 488 U.S. 952, 109 S.Ct. 386, 102 L.Ed.2d 376 (1988); *Kuntz v. Winters National Bank and Trust Co.*, 480 U.S. 933, 107 S.Ct. 1572, 94 L.Ed.2d 764 (1987); *Kuntz v. Winters National Bank and Trust Co.*, 465 U.S. 1080, 104 S.Ct. 1443, 79 L.Ed.2d 763 (1984).

pleadings filed by Kuntz, which are listed on *Appendix A,* are stricken. Any future pleadings filed by Kuntz will be stricken for lack of standing until further order of this Court.

**SO ORDERED.**

### APPENDIX A

| Date | Docket No. | Document |
|------|-----------|----------|
| 6/11/99 | 827 | Motion of William Kuntz, III under FRBP 9024 with Respect to the Warehouse Lenders Settlement |
| 6/28/99 | 886 | Notice of Motion and Motion Under Rule 8002(c) (Fleet Bank Credit Card Contract) |
| 6/28/99 | 887 | Election to Have Appeal Heard by the District Court Under 28 U.S.C. § 158(c)(1) by William Kuntz, III (re Doc # 826) |
| 6/28/99 | 888 | Omnibus Objection to Severance Pay and Other Relief/Cross Motion for Appointment of a Chapter 11 Trustee by William Kuntz, III |
| 8/3/99 | 1066 | Objection of William Kuntz, III to NCO Sale |
| 8/3/99 | 1067 | Objection of William Kuntz, III to Oral Roberts University Lease Settlement |
| 8/3/99 | 1068 | Motion under Rule 9024 by William Kuntz, III |
| 8/3/99 | 1069 | Notice of Motion under Rule 9024 by William Kuntz, III |
| 8/4/99 | 1082 | Observations Upon Bloomberg, LP Contract |
| 8/4/99 | 1083 | Objection of William Kuntz, III to Bank of Oklahoma, NA Setoff/Satisfaction |
| 8/4/99 | 1084 | Objection to Creditrust–Financial Assets Sale of $536 Million by William Kuntz, III |
| 8/10/99 | 1123 | Notice of Motion under Rule 9024 |
| 8/24/99 | 1184 | Request of Extension of 20 Calendar Days to Object to Contract Rejection Request of CFS |
| 8/24/99 | 1186 | Objection to Fried Frank Stipulation by William Kuntz, III |