In re GRAND UNION COMPANY,
Debtor.

William KUNTZ, III, Appellant,

v.

SAUL, EWING, REMICK & SAUL, Patterson, Belknap, Webb & Tyler, LLP, Marcus Montgomery P.C., Williams, Hershman & Wisler, P.A., Peterson Consulting, L.P., and Argosy Group, L.P., Appellees.

Civil Action No. 95–726–RRM.

United States District Court,
D. Delaware.

Aug. 27, 1996.

Jeffrey C. Wisler, Williams, Hershman & Wisler, P.A., Wilmington, DE, Neil P. Forest, Marcus Montgomery P.C., New York City, for appellees Marcus Montgomery P.C., Williams, Hershman & Wisler, P.A., Peterson Consulting, L.P. and Argosy Group. L.P.

William Kuntz, III, Lake Placid, NY, pro se appellant.

Norman L. Pernick and Mark Minuti, Saul, Ewing, Remick & Saul, Wilmington, DE, David W. Dykhouse and Lisa M. Napoletano, Patterson, Belknap, Webb & Tyler LLP, New York City, for appellees Saul, Ewing, Remick & Saul and Patterson, Belknap, Webb & Tyler LLP.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a bankruptcy appeal. Debtor Grand Union Company ("GU") is a wholly owned subsidiary of Grand Union Capital Corporation ("GUCC"), which is a wholly owned subsidiary of Grand Union Holdings Corporation ("GUHC"). *Pro se* appellant is the purported holder of certain unspecified zero coupon notes issued by GUCC. Appellees are various professionals involved in GU's bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware.

On November 28, 1995, appellant filed a notice of appeal challenging the Bankruptcy Court's September 19, 1995 order awarding professional fees and expenses in the GU bankruptcy proceeding (the "fee order"). On December 22, 1995, appellant filed a motion to stay the briefing schedule in this appeal. In an Order dated April 18, 1996, the court denied appellant's motion and stated that it would dismiss this appeal if appellant did not

file his brief by May 3, 1996. Appellant filed his brief on that date.

On May 16, 1996, appellees Saul, Ewing, Remick & Saul (the "Saul, Ewing firm") and Patterson, Belknap, Webb & Tyler LLP (the "Patterson, Belknap firm") filed a joint motion to dismiss this appeal as frivolous and to award sanctions to them under Rule 38 of the Federal Rules of Appellate Procedure ("FRAP"). On May 17, 1996, appellees Marcus Montgomery P.C., Williams, Hershman & Wisler, P.A (the "Williams, Hershman firm"), Peterson Consulting, L.P. ("Peterson"), and Argosy Group, L.P. ("Argosy"), filed an answering brief seeking dismissal of this appeal as frivolous.

This is the court's decision on whether to dismiss this bankruptcy appeal and whether to sanction appellant for filing this appeal.

## I. *FACTUAL BACKGROUND*

This appeal arises from the Chapter 11 cases of GU, GUCC, and GUHC. In order to finance an earlier recapitalization of GU, GUCC issued a ·total of approximately $1 billion in zero coupon notes (the "notes"). GUCC's sole asset was the common stock of GU, which had been pledged to secure GU's debt obligations. GUHC owned all of GUCC's common stock and was also the guarantor of the notes.

In December of 1994, GU organized the various creditor constituencies of GU, GUCC, and GUHC, including the noteholders, into committees in order to develop a consensual plan for restructuring the debt of GU. The members of the noteholder committee held approximately 70% of the outstanding notes. In January of 1995, GU reached an agreement with these creditor constituencies, except for the noteholder committee, on the terms of a plan of reorganization for GU. This plan proposed to distribute all of the equity of GU to one class of GU's bondholders and to eliminate GUCC's equity interest in GU, which would make the notes valueless.

On January 25, 1995, GU filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. On February 6, 1995, GU filed a plan and disclosure statement that sought to implement the terms of its plan. Pursuant to the terms of the indentures governing the notes, GU's Chapter 11 filing constituted a default and the notes became due immediately. The noteholder committee then formally requested that GUCC file under Chapter 11. When GUCC failed to do so, the noteholder committee filed an involuntary petition against GUCC on February 6, 1995.

GUCC consented to the entry of an order for relief on February 16, 1995. On that same date, GUHC voluntarily filed under Chapter 11 as well. Also on that same date, GUCC and GUHC submitted applications to retain appellees the Saul, Ewing firm and the Patterson, Belknap firm as counsel in the bankruptcy proceeding. On February 24, 1995, the Bankruptcy Court ordered the retention of these firms *nunc pro tunc* to February 16, 1995.

On March 3, 1995, the United States Trustee appointed an official committee of unsecured creditors in the GUCC case (the "GUCC committee"). The GUCC committee consisted of all of the members of the noteholder committee and two additional noteholders. Appellees Marcus Montgomery, the Williams, Hershman firm, Peterson, and Argosy (collectively, the "GUCC committee professionals") had already been advising the noteholder committee. The GUCC committee submitted applications to retain the GUCC committee professionals in the bankruptcy proceeding, and the Bankruptcy Court approved all of these applications.

As a result of various efforts of the Saul, Ewing firm, the Patterson, Belknap firm, the GUCC committee, and the GUCC committee professionals, GU and the GUCC committee negotiated a settlement agreement to resolve the GUCC committee's objections and to propose a consensual plan of reorganization (the "reorganization plan"). Under the settlement agreement, the reorganization plan would provide that noteholders could exchange their notes·for warrants to purchase the common stock of the reorganized GU (the "warrants"). The settlement agreement also provided that GU would pay the fees and expenses of the Saul, Ewing firm, the Patterson, Belknap firm, and the GUCC committee professionals up to $750,000. Af-

ter notice and a hearing, the Bankruptcy Court entered an order approving the settlement agreement on May 18, 1995 (the "settlement order").

The Bankruptcy Court also subsequently approved the disclosure statement relating to the proposed reorganization plan, including the terms of the settlement agreement, in the GU Chapter 11 case. The reorganization plan and the disclosure statement were circulated to GU's creditors and the noteholders. It appears that appellant was the only noteholder who voted against the reorganization plan. After notice and a hearing, the Bankruptcy Court entered an order confirming the reorganization plan on May 31, 1995 (the "confirmation order"). The reorganization plan became effective on June 15, 1995.

Appellees each filed fee and expense applications to the Bankruptcy Court. It appears that the fee applications, and the notice of the hearing on the applications, were properly filed and served. On September 13, 1995, the Bankruptcy Court held the hearing as noticed. Appellant was present and presented the following objection:

It appears that the Grand Union Capital Corp Professionals have made an application under the wrong case Number. Objectant is not aware of any Notice being made under 85–130 GRAND UNION CAPITAL CORP and thus all Fee Request[s] for those Professionals should be Renotice[d] under the Correct Case Number with proper service.

Appellant did not object to the amount of the fees or the service provided by appellees. The Bankruptcy Court overruled appellant's objection and entered the fee order.

GU subsequently paid $750,000 for the fees and expenses of appellees pursuant to the reorganization plan and the settlement agreement. The tendering and exchange of the various debt instruments of the reorganized GU and of GUCC occurred in the months following the plan. It appears that substantially all of the noteholders, except for appellant, have tendered their notes in exchange for warrants under the reorganization plan. In addition, GUCC's ownership of GU's common stock has been canceled, and the stock of the reorganized GU has been distributed to former creditors of GU pursuant to the terms of the reorganization plan.

## II. DISCUSSION

Appellant raises six issues on appeal: 1) that the professional fees were excessive in relation to the benefit conferred on the debtor; 2) that the fee applicants failed to serve notice of the applications; 3) that the professionals sought and were awarded fees under the wrong case number; 4) that the reorganization plan did not allow the professionals to petition for payments in the GU Chapter 11 case; 5) that a pre-petition payment of $100,000 to Argosy warranted a denial of a fee; and 6) that the Bankruptcy Court did not enter an order allowing the retention of the GUCC committee professionals.

■ All appellees argue that the court should dismiss this appeal under the doctrine of "equitable mootness." In addition, they argue that appellant's claims are legally and factually frivolous because the fee order was proper. Appellees the Saul, Ewing firm and the Patterson, Belknap firm also argue separately that appellant did not raise five of these six issues before the Bankruptcy Court and thus may not raise those issues on appeal. These two appellees seek sanctions, including attorney fees and double costs, pursuant to FRAP 38 due to the frivolous nature of appellant's claims.

### A. Should the Court Dismiss This Bankruptcy Appeal Under the Doctrine of Equitable Mootness?

■ The Court of Appeals for the Third Circuit recently adopted a doctrine applicable to bankruptcy cases known as "equitable mootness." See In re Continental Airlines, 91 F.3d 553 (3d Cir.1996). The doctrine of equitable mootness allows a district court to dismiss a bankruptcy appeal for equitable and prudential reasons even when the court could afford some relief. Id. at 557–60. Thus, equitable mootness differs from constitutional mootness, which results from the inability of the court to provide relief. Id. This court need not reach the merits of this appeal if it may properly dismiss the appeal under the doctrine of equitable mootness.

*Id.; In re Box Brothers Holding Co.*, 194 B.R. 32 (D.Del.1996).

■ The Court of Appeals identified five factors to consider in determining whether to dismiss a bankruptcy appeal under the doctrine of equitable mootness:

(1) whether the reorganization plan has been substantially consummated,

(2) whether a stay has been obtained,

(3) whether the relief requested would affect the rights of parties not before the court,

(4) whether the relief requested would affect the success of the plan, and

(5) the public policy of affording finality to bankruptcy judgments.

*Continental*, 91 F.3d at 560; *see also Box Brothers*, 194 B.R. at 39. The court will address each of these factors in turn.

1. *Has the reorganization plan been substantially consummated?*

■ The foremost consideration in applying the doctrine of equitable mootness is whether the reorganization plan has been substantially consummated. *Continental*, 91 F.3d at 560–61; *Box Brothers*, 194 B.R. at 39. The Bankruptcy Code defines "substantial consummation" as:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

In the present case, the Bankruptcy Court confirmed the reorganization plan on May 31, 1995. The reorganization plan became effective on June 15, 1995. Pursuant to the terms of the reorganization plan, GUCC's ownership of GU's common stock has been canceled, and the common stock of the reorganized GU has been distributed to former creditors of GU. Therefore, the only asset that could have supported GUCC's ability to repay the notes, its equity interest in GU, no longer exists. In addition, the reorganized GU has issued new common stock, new bonds, and the warrants. Thus, it appears that the reorganization plan has been substantially, if not entirely, consummated.

2. *Did Kuntz obtain a stay of the Bankruptcy Court's order?*

■ The existence or absence of a stay is a critical factor in determining whether to dismiss an appeal under the doctrine of equitable mootness. *Continental*, 91 F.3d at 561–63; *Box Brothers*, 194 B.R. at 39–40. The Bankruptcy Court entered the settlement order on May 18, 1995, the confirmation order on May 31, 1995, and the fee order on September 19, 1995. Kuntz failed to seek a stay of any these orders. Consequently, the reorganization plan has been substantially consummated, and GU has paid the professional fees. Moreover, the former creditors of GU, the public investors in the reorganized GU, and the appellees have proceeded in reliance on the Bankruptcy Court's orders for over one year.

3. *Would the relief requested affect the rights of parties not before the court or the success of the plan?*

Kuntz fails to specify the relief that he seeks pursuant to this appeal. To the extent he seeks to reverse the fee order, however, such relief could jeopardize the rights of third parties and the success of the reorganization plan. It appears that the members of the noteholder committee agreed to pay their own professional fees, which amounted to $750,000, with the understanding that GU would reimburse them pursuant to the settlement agreement and the reorganization plan. Moreover, the provision for the payment of professional fees and expenses is explicitly stated in the reorganization plan. A reversal of the fee order might undermine the settlement agreement, which in turn might undermine the reorganization plan itself. In addition, it would undermine the reasonable reliance placed by the noteholders on the settlement agreement, which has been in place for over a year and a half, and

expose them to potential liability for the professional fees.

4. *Does the public policy of affording finality to Bankruptcy Court judgments suggest that the court should dismiss this appeal?*

The public policy of affording finality to Bankruptcy Court judgments suggests that the court should dismiss this appeal. The reorganization plan has been in place for nearly a year and a half. Most if not all of the noteholders, except for appellant, have agreed with the settlement agreement and the reorganization plan and have exchanged their notes for warrants. Appellant is the sole individual to have appealed the confirmation, settlement, or fee orders, and he has never sought to stay any of these orders. Moreover, appellant specifically delayed the presentation of this appeal by failing to file his appellate brief until this court ordered him to do so almost six months after he filed his notice of appeal.

For the reasons set out above, the court finds that it would be unfair and imprudent to reverse the fee order. Thus, the court will dismiss the bankruptcy appeal pursuant to the doctrine of equitable mootness.

B. *Should the Court Sanction Appellant for Filing This Appeal?*

■ Appellees the Saul, Ewing firm and the Patterson, Belknap firm argue that the court should award attorney fees and double costs to them pursuant to Rule 38 of the Federal Rules of Appellate Procedure ("FRAP") because this appeal is frivolous. In support of this contention, they argue that appellant has raised new issues on appeal and that none of appellant's claims have any legal or factual merit.

■ When reviewing a Bankruptcy Court order, this court sits as an appellate court and may apply the FRAP. *See* 28 U.S.C. § 158; *Cianchette v. Bank of New England,* 123 B.R. 675, 686 n. 19 (D.Maine 1991); *Warsco v. Graves,* 70 B.R. 535, 540 (N.D.Ind.1987). FRAP 38 states:

Rule 38. Damages and Costs for Frivolous Appeals

If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

An appeal is frivolous if it is wholly without merit. *Quiroga v. Hasbro, Inc.,* 943 F.2d 346, 347 (3d Cir.1991). The applicable test is whether a reasonable attorney would conclude, following a thorough analysis of the record and the applicable law, that the appeal is frivolous. *Id.*

1. *Is this appeal frivolous?*

It appears that this appeal is frivolous. Appellant never presented to the Bankruptcy Court five of the six issues he now raises on appeal. Thus, appellant has not properly preserved these issues for appeal. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Newark Morning Ledger Co. v. U.S.,* 539 F.2d 929, 932 (3d Cir.1976). Even if appellant had properly raised his claims in the Bankruptcy Court, however, none of them appear to have any legal merit.

■ A bankruptcy court has broad discretion to award fees and approve settlements. *Anderson v. Anderson,* 936 F.2d 199, 204 (5th Cir.1991). This court reviews an award of fees in a bankruptcy case for abuse of discretion. *Zolfo, Cooper & Co. v. Sunbeam–Oster Co.,* 50 F.3d 253, 261 (3d Cir. 1995). Appellant does not allege that the professionals failed to perform the services for which they were compensated, that the rates they charged were unreasonable, or that the parties did not require their services *See* 11 U.S.C. § 330. Rather, appellant makes a number of frivolous arguments.

Appellant argues that the fees were excessive because they are disproportionate to the current alleged value of the warrants. He cites no cases in support of this argument, nor is the court aware of any such cases. Moreover, he provides no factual basis for his valuation of the warrants. It appears that the Bankruptcy Court considered the proper factors under § 330. Appellant seeks to have the Bankruptcy Court condition the payment of professional fees based on specu-

lation as to the value of long-term securities such as the warrants. This would be improper and practically impossible.

Appellant also argues that the fee applications were not properly served and that the professionals sought fees under the wrong case number. Bankruptcy Rule 2002(a)(7) only requires notice of hearings for fee and expense applications in excess of $500. GU's counsel served notice of the September 18, 1995 hearing on the fee applications, and appellant admits that he received such notice. As to his wrong case number theory, appellant neither alleges nor demonstrates any prejudice from this alleged error. Moreover, the reorganization plan authorized the payment of the fee awards in the GU case, and it appears that the Bankruptcy Court entered the fee order in the GU and GUCC Chapter 11 cases.

Appellant next argues that the reorganization plan did not authorize GU to pay the professional's fees and expenses. This is a misstatement of the facts. Section 2.03 of the reorganization plan specifically states:

> The reasonable fees and expenses incurred on or after the Filing Date by the Capital Committee Advisors or the Informal Zero Committee Advisors with respect to this Chapter 11 Case or the GUCC Chapter 11 Case shall be paid by the Reorganized Grand Union after notice and a hearing in accordance with the procedures established by the Bankruptcy Court for the professionals employed by the Debtor or the Official Committee....

The reorganization plan identifies appellees as the "Capital Committee Advisors" and the "Informal Zero Committee Advisors." Thus, the Bankruptcy Court properly approved GU's payment of these professional fees pursuant to the reorganization plan.

Finally, appellant appears to argue that appellees were not properly retained as professionals by order of the Bankruptcy Court and that a pre-petition payment to Argosy created a conflict of interest. Contrary to appellant's assertions, the Bankruptcy Court approved the retention of all the professionals and their fees. As to the conflict of interest allegation, appellant fails to cite any relevant authority or to make any coherent legal argument.

2. *Should the court excuse appellant's filing of this appeal conduct because he is proceeding pro se?*

█ *Pro se* litigants deserve patience and tolerance because they usually lack the education, knowledge, and experience of licensed practitioners. However, a litigant's *pro se* status does not shield him or her from sanctions for filing a frivolous appeal. *Anderson v. Steers, Sullivan, McNamar & Rogers,* 998 F.2d 495, 496 (7th Cir.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994); *Stelly v. Commissioner of Internal Revenue,* 761 F.2d 1113, 1116 (5th Cir.1985). The circumstances of this case suggest that despite the fact that appellant is proceeding *pro se,* an award of sanctions may be warranted.

Appellant has deliberately delayed the disposition of this frivolous appeal by failing to comply with the rules of procedure. He filed a motion to extend the time in which to file his appellate brief *after* the brief was due. When appellant finally did file his brief, it was over six months late. The court further observes that appellant may have never filed his brief if the court had not ordered him to do so. Finally, when appellant did file his brief, he raised five issues never raised in the Bankruptcy Court. Appellant's procedural defaults have unnecessarily prolonged this proceeding, thereby casting a cloud over the reorganization plan and causing appellees to incur additional costs and expenses in responding to appellant's frivolous claims.

Although appellant is proceeding *pro se,* he cannot explain his procedural defaults and his frivolous claims due to inexperience or lack of knowledge. As one court has observed:

> [Appellant] has amassed litigation experience that would embarrass the majority of associates, and some partners, at large New York law firms.... I find that his failure to comply with court rules, procedures, and deadlines is a result of conscious disregard, and not because of unfamiliarity with the courts.

*Kuntz v. Pardo*, 160 B.R. 35, 39 (S.D.N.Y. 1993). In those proceedings, appellant filed eight unsuccessful appeals, six of which the court dismissed for procedural defaults. *Id.* In this bankruptcy proceeding, appellant has now filed a total of seven unsuccessful appeals, six of which this court has dismissed for procedural defaults. *See In re: Grand Union Capital Corp.*, C.A. No. 96–258–RRM (D.Del. July 9, 1996) (Order); *In re: Grand Union Co.*, C.A. No. 95–532–RRM (D.Del. June 12, 1996) (Order); *William Kuntz v. The Grand Union Co.*, C.A. No. 95–529–RRM (D.Del.February 29, 1996) (Memorandum Opinion) (dismissing four consolidated appeals).

Appellant has pursued unsuccessful appeals in at least three other bankruptcy proceedings, at least two of which involved procedural errors of some sort. *See Kuntz v. Nova Vista Indus., Inc.*, No. 91 Civ. 7222 (PKL), 1992 WL 60395 (S.D.N.Y. March 9, 1992) (dismissing a bankruptcy appeal for failure to file a timely appellate brief pursuant to Rule 8009 of the Federal Rules of Bankruptcy Procedure); *In re Adirondack Railway Corp.*, Nos. 89–CV–1489, 90–CV–0050, 1990 WL 124225 (N.D.N.Y. Aug. 23, 1990) (dismissing a bankruptcy appeal on the merits); *In re One Westminister Co., Inc.*, 74 B.R. 37 (D.Del.1987) (denying an improper motion for a stay pending an appeal for lack of jurisdiction).

The court further observes that appellant's procedural defaults and assertions of meritless claims are not limited to bankruptcy proceedings. *See Kuntz v. Board of Assessment*, 211 A.D.2d 841, 621 N.Y.S.2d 942 (1995) (dismissing an appeal as untimely and frivolous); *Kuntz v. Lake Placid Olympic Organizing Committee of 1980, Inc.*, 148 Misc.2d 649, 561 N.Y.S.2d 518 (Supr.Ct.1990) (dismissing appellant's attempt to use a pending bankruptcy case as an excuse for failure to serve a complaint); *Kuntz v. Shawmut Bank of Boston*, No. 86 Civ. 6771 (MGC), 1987 WL 11172 (S.D.N.Y. May 12, 1987) (dismissing appellant's improper attempt to bring a *pro se* derivative action); *Dayton Arcade Community Development Corp. v. City of Dayton*, No. CA 10109, 1987 WL 6251 (Ohio Ct.App. Feb. 6, 1987) (dismissing an appeal as untimely and devoid of merit); *In re Estate of Kuntz*, No. CA 9723, 1986 WL 14771 (Ohio Ct.App. Dec. 17, 1986) (dismissing an appeal as devoid of merit).

The court is aware of only one other *pro se* litigant who has such a well documented history of abusing the court system. Appellant's pattern of conduct depicts an individual who is familiar with the rules of procedure and yet chooses to disregard these rules as it suits him. Moreover, this pattern of conduct depicts an individual who brings frivolous lawsuits and appeals either knowingly or with wilful ignorance. Against this backdrop, appellant's procedural abuses and meritless arguments in the present case suggest that appellant's main purpose in bringing this appeal is to harass the appellees and to disrupt the implementation of the reorganization plan, not to vindicate his rights. Thus, for the reasons set out above, the court finds that an award of sanctions may be warranted in this case.

Due process requires the court to give notice to a litigant facing potential sanctions of the bases for the imposition of the sanctions and an opportunity to be heard on those issues. *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies Inc.*, 57 F.3d 1215, 1225–27 (3d Cir.1995); *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir.1990). This Memorandum Opinion shall serve as notice to appellant that he faces sanctions under FRAP 38 for filing this frivolous appeal. The court will schedule a hearing at which appellant may be heard on these issues and appellees may present evidence of their attorney fees and costs.

The court shall issue an Order in accordance with this Memorandum Opinion.