**Alka PATEL, Appellant,**

v.

**Stephen W. RUPP, Trustee, Appellee.**

**Bankruptcy No. 95–2009.**

**No. 95–cv–1089W.**

United States District Court,
D. Utah,
Central Division.

May 9, 1996.

Hollis S. Hunt, Salt Lake City, UT, for Appellant.

Gregory J. Adams, McKay, Burton & Thurman, Salt Lake City, UT, for Appellee.

## MEMORANDUM DECISION AND ORDER ON DEFENDANT'S BANKRUPTCY APPEAL

WINDER, Chief Judge.

This matter is before the court on defendant's appeal from the bankruptcy court, argued on April 25, 1996. At the hearing, Hollis S. Hunt represented the defendant/appellant Alka Patel ("Appellant"), and Gregory J. Adams represented the trustee/appellee Stephen W. Rupp ("Trustee"). The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to this appeal. Now being fully advised, the court enters the following Memorandum Decision and Order.

### I. *BACKGROUND*

Debtors Arvind C. Patel ("Arvind") and Aruna A. Patel ("Aruna") (collectively the "Debtors") owned the property at issue (the "Property") until the latter part of December 1989. In late December 1989, the Appellant alleges that she purchased the Property from the Debtors for fair market value of $65,000. Because Arvind was out of the state at the time the transfer was to occur, the Debtors prepared two separate quit claim deeds to effectuate the transfer. Appellant properly recorded Aruna's quit claim deed in December 1989, and intended to record Arvind's quit claim deed upon his return to the state. However, Arvind's deed was never recorded.

Appellant began to operate the Property as though she were the sole owner. Appellant rented the property, collected revenue, and paid all taxes and costs of improvements. Because Appellant lived in Massachusetts, she used a property management company to operate and maintain the Property. Arvind did not contribute to the operation or management of the property nor receive any benefits from the Property.

In April 1992, the Debtors filed for bankruptcy. The Debtors did not disclose any claim of ownership of the Property in their bankruptcy filing. In December 1994, the Trustee became aware of Appellant's failure to record Arvind's quit claim deed. Attempting to recover a one-half interest in the Property for the benefit of the bankruptcy estate, the Trustee filed a motion of intent to sell. The Trustee brought a Motion for Summary Judgment before the bankruptcy court, arguing that 11 U.S.C. § 544(a)(3) gave him the authority for such action. The bankruptcy court agreed and granted summary judgment in favor of Trustee. Appellant now appeals the bankruptcy court's decision.

## II. *STANDARD OF REVIEW*

This court reviews the legal conclusions of the bankruptcy court de novo. *In re Themy*, 6 F.3d 688 (10th Cir.1993). This court is bound by the bankruptcy court's factual findings unless such findings are clearly erroneous. *Id.*

## III. *DISCUSSION*

Appellant argues that the bankruptcy court erred in ruling that Section 544(a)(3) entitles the Trustee to a one-half interest in the Property. Section 544(a)(3) states:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor … that is voidable by—

. . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544. The powers under Section 544 are commonly known as the trustee's "strong-arm" lien avoidance powers.

Appellant claims that the Trustee is precluded from exercising his strong-arm powers under Section 544 because (1) 11 U.S.C. § 541(d) limits those powers; and (2) the Trustee had inquiry notice of Appellant's unrecorded interest in the Property.

### A. *The Relationship Between Sections 544 and 541*

██ Appellant asserts that the Trustee's strong-arm powers are limited by operation of Section 541(d). This Section states:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest … becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Appellant argues that Arvind held only legal title to the disputed half-interest of the Property. Accordingly, she claims that Section 541 protects her equitable interest in the disputed one-half interest from the Trustee's strong-arm power.

The court disagrees. Although there is a split of authority, the court concludes that the opinions holding that Section 541(d) is not a limit on a trustee's strong-arm powers are the better reasoned. *See In re Tleel*, 876 F.2d 769 (9th Cir.1989); *In re Markair, Inc.*, 172 B.R. 638 (9th Cir. BAP 1994); *In re Ebel*, 144 B.R. 510 (Bankr.D.Colo.1992); *In re Granada, Inc.*, 92 B.R. 501 (Bankr.D.Utah 1988); *In re Cascade Oil Co.*, 65 B.R. 35 (Bankr.D.Kans.1986); *In re Great Plains Western Ranch Co.*, 38 B.R. 899 (Bankr. C.D.Cal.1984); *Nile Valley Federal Savings & Loan Assn. v. Security Title Guarantee*, 813 P.2d 849 (Colo.Ct.App.1991). *But see In re Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir.1985). *See generally* 96 A.L.R.Fed. 100. The Trustee's strong-arm powers under Section 544 function independently of Section 541(d) and are not automatically limited by operation of Section 541(d). Thus, the bankruptcy court properly ruled on this issue.

### B. *Inquiry Notice*

██ Appellee also contends that, even if Section 544 is not limited by Section 541, the Trustee cannot exercise his strong-arm powers because he had inquiry notice of Arvind's previous, unrecorded transfer of his one-half interest in the Property to Appellee. Although Appellee is correct in stating that a trustee having inquiry notice of a prior, unrecorded conveyance cannot avoid that conveyance under Section 544, the court concludes that the Trustee had no such notice. Thus, the bankruptcy court properly granted summary judgment.

██ At the time of bankruptcy filing, a trustee assumes the position of a bona fide purchaser ("B.F.P.") of real property from the debtor and may avoid any liens on, or transfers of, the property that a B.F.P. could avoid under state law. 11 U.S.C. § 544(a)(3); *Watkins v. Watkins*, 922 F.2d 1513, 1514 (10th Cir.1991). The trustee, however, as-

sumes the B.F.P. position subject to the state's notice laws.[1] *See, e.g., Watkins,* 922 F.2d at 1514 (constructive notice imposed by state law will destroy the B.F.P.'s priority claim to the property and, as a result, the trustee's avoidance power under Section 544(a)(3)).

Under Utah law, the requirements of becoming a B.F.P. are set forth in *Utah Code Ann.* § 57–3–3 (1994).[2] To prevail over an unrecorded interest, a B.F.P. must not have actual or constructive notice of that conveyance. *See* Utah Code Ann. § 57–3–2(1) (properly recorded documents "shall ... impart notice to all persons of their contents); *id.* § 57–3–2(1) ("This section does not affect the validity of a document with respect to parties to the document and all other persons who have notice to the document."); *accord Utah Farm Prod. Credit Assoc. v. Wasatch Bank,* 734 P.2d 904, 906 n. 2 (Utah 1986) ("Actual or constructive notice defeats a subsequent purchaser's interest.").

Utah courts have also recognized the doctrine of inquiry notice:[3] "[I]f a party dealing with the land has information or facts which would put a prudent person upon an inquiry which, if pursued, would lead to actual knowledge as to the state of the title," that party cannot avoid a prior, unrecorded transfer. *Diversified Equities v. American Savings & Loan Ass'n,* 739 P.2d 1133, 1136 (Utah Ct.App.1987); *accord Johnson v. Bell,* 666 P.2d 308, 310 (Utah 1983).[4] The doctrine of inquiry notice under Utah law involves a two-step analysis:

First, the court must determine whether the purchaser is in possession of facts, or whether inspection of the property would have brought to the purchaser's attention activity on the property, which would have reasonably alerted the purchaser to potential claims of any party other than the grantor or record title holder. If the purchaser has such facts, or if there is activity on the property reasonably alerting the purchaser to adverse claims, the purchaser is placed on inquiry notice; and, under the

1. Although Section 544 grants a trustee the strong-arm powers "without regard to any knowledge of the trustee," the legislative history and the overwhelming majority of decisions indicate that "knowledge" relates only to actual knowledge of the trustee, not to legal notice. *See McCannon v. Marston,* 679 F.2d 13 (3d Cir. 1982); *In re Weisman,* 131 B.R. 148 (Bankr.N.D.Calif.1991).

2. This provision states:
Each document not recorded as provided in this title is void as against any subsequent purchaser of the same real property, or any portion of it, if:
(1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and
(2) the subsequent purchaser's document is first duly recorded.
Utah Code Ann. § 57–3–3 (1994).

3. Inquiry notice has been characterized as a form of constructive notice. *See, e.g., In re Granada, Inc.,* 92 B.R. 501, 505 (Bankr.D.Utah 1988). It has also been characterized as a derivative of actual notice. *See, e.g., Diversified Equities, Inc. v. American Savings & Loan Assoc.,* 739 P.2d 1133, 1136 (Utah Ct.App.1987).

4. Utah courts have only addressed inquiry notice in the context of Utah Code Ann. § 57–1–6, which was repealed in 1988. Utah courts have not reached the question of inquiry notice under the current provision, Utah Code Ann. § 57–3–2.

Section 57–1–6 stated:
Every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, to operate as notice to third persons shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such proofs, acknowledgment, certification or record, and as to all other persons who have had *actual notice.*
Utah Code Ann. § 57–1–6 (1986) (emphasis added), repealed by Utah Laws 1988, ch. 155, § 24.
Section 57–3–2 now provides:
(1) Each document executed, acknowledged, and certified, in the manner prescribed by this title ... shall, from the time of filing with the appropriate county recorder, impart notice to all persons of their content.
....
(3) This section does not affect the validity of a document with respect to the parties to the document and all other persons who have *notice* of the document.
Utah Code Ann. § 57–3–2 (1994) (emphasis added).
The court concludes that the notice requirement in Section 57–3–2, which is at least as broad as it existed in Section 57–6–1, embraces the concept of inquiry notice as that doctrine developed under Section 57–1–6.

second step, the purchaser is charged with all knowledge that a reasonable due diligence investigation would have revealed. A purchaser's duty to investigate arises only when the purchaser is placed on inquiry notice under the first prong of the analysis.

*In re Granada, Inc.,* 92 B.R. 501, 506 (Bankr. D.Utah 1988).

In this case, Appellant argues that Trustee had inquiry notice of her interest in the property because she was in "possession" of the Property. *See Mathis v. Madsen,* 1 Utah 2d 46, 261 P.2d 952, 959 (1953) ("Actual possession ... when open, visible, and exclusive, will put upon inquiry those acquiring any title to or a lien upon the land so occupied to ascertain the nature of the rights the occupants really have in the premises." (quotation omitted)); *Toland v. Corey,* 6 Utah 392, 24 P. 190 (1890) (actual occupancy is enough to put parties dealing with premises upon inquiry); *see also In re Gagon,* C–82–1003W (D.Utah 1983) ("[P]ossession of real property is actual notice to all the world of the possessor's interest."). Acknowledging that she was not in actual physical possession of the property, Appellant argues that "[a] property owner doesn't have to be physically present on his parcel of real property at all times to be in 'possession.' ... The [Appellant] met her burden of 'possession' by having a highly visible and professional property management company manage her property while she is out of state...."

■ The court disagrees. Under the first prong of the inquiry notice analysis, a B.F.P.'s inspection of property has to alert the B.F.P. to claims potentially adverse to the record title holders. Upon initial inspection, the only duty the B.F.P. has is to inquire of any persons in actual physical possession of the property of the extent of their interests. Actual physical possession by an individual with an unrecorded interest in the

property satisfies the first prong of the analysis because the B.F.P. will learn of that potentially adverse claim upon inquiring of that person of their interest. Conversely, hiring a company to manage property, as with renting property to tenants, does not satisfy the first prong because such an arrangement would not be inconsistent with or adverse to the recorded interests, regardless of the number of recorded interests or the different percentages of those interests. Accordingly, unless there are other facts or activities that would independently satisfy the first prong, once the purchaser knows that the occupants have no title interest in the property, the purchaser is under no further duty to investigate the identity of the owners beyond those that are recorded. *See, e.g., Stumph v. Church,* 740 P.2d 820, 822 (Utah ·Ct.App.1987) (under inquiry notice analysis, a B.F.P. "does not have a duty ... to inquire as to the identity of the landlord or ask to see a copy of the lease or rental agreement.").

■ Appellant argues that "[a]ny preliminary inquiry of the management company ... would disclose the [Appellant's] ownership."[5] This confuses the first prong of the analysis—whether the B.F.P. has a duty to further investigate and inquire—and the second prong—the duty to inquire itself. *See In re Granada,* 92 B.R. at 506. Unless the B.F.P. knows additional facts or there is activity apparent upon inspection "which would have reasonably alerted" the B.F.P. of the Appellant's interest requiring the B.F.P.'s further investigation, no further inquiry needs to be made. In this case, Appellant has not alleged additional facts that would have alerted the Trustee of Appellant's potentially adverse claim. Thus, the first prong of the inquiry notice analysis was not met and the Trustee was under no duty to make further inquiry.

---

**5.** Appellant also argues that "Any preliminary inquiry of ... the records of the Recorder's Office would disclose the [Appellant's] ownership." Along this same line, Appellant asserts that "[t]he Trustee was placed on constructive inquiry notice when he saw that the [Appellant] had a recorded interest in the property and claimed

possession of the Property." The court disagrees. A preliminary inquiry of these records would have shown, as it did, that Arvind jointly owned the Property with Appellant. Records of joint ownership do not impose upon a potential B.F.P. a duty to further investigate the ownership of the property.

## IV. *ORDER*

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED that the decision of the bankruptcy court is affirmed.