### In re PAUL J. PARADISE & ASSOCIATES, INC.

**Rodman F. Mullins, Jr., Plaintiff Below/Appellant,**

v.

**Jeoffrey L. Burtch, Trustee/Appellee.**

**No. Civ.A. 99–198 MMS.**

United States District Court, D. Delaware.

Argued Nov. 2, 1999.

Decided June 6, 2000.

---

19. This amount must be reduced to reflect the correct interest calculation.

Andrew J. Witherell, Wilmington, DE, for appellant.

Jeoffrey L. Burtch, Cooch and Taylor, Wilmington, DE, for appellee.

## OPINION

SCHWARTZ, Senior District Judge.

### I. Introduction

This case requires the Court to address the applicability of equitable trusts in bankruptcy, "the subject of a contentious, contradictory, and expanding body of case law."[1] Rodman F. Mullins, Jr., ("Mullins") appeals a December 29, 1997 final order of the Bankruptcy Court of the Dis-

---

1. *In re PKR, P.C.*, 220 B.R. 114, 117 (10th Cir.   BAP 1998).

trict of Delaware granting summary judgment to Chapter 7 Trustee, Jeoffrey L. Burtch ("Trustee").

In an adversary corporate Chapter 7 proceeding before the Bankruptcy Court, Mullins filed a complaint seeking a determination that a parcel of real estate, Lot 33, was not part of the Chapter 7 estate of debtor Paul J. Paradise & Associates, Inc. ("P & A") and directing the Trustee to turn Lot 33 over to Mullins. The Trustee moved for summary judgment, asserting that Lot 33 constituted property of the estate pursuant to 11 U.S.C. § 544(a). The Bankruptcy Court held as a matter of law that, even assuming an equitable trust in favor of Mullins could be imposed on Lot 33, Lot 33 was subject to the Trustee's "strong arm" powers under § 544(a)(3) and, therefore, was part of the estate of P & A.

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The grant of summary judgment for the Trustee will be affirmed.

## II. Background

### A. Factual Summary

In the early 1990s, Mullins and P & A, a home-builder, entered into separate real estate transactions regarding four lots of unimproved real estate—Lots 33, 34, 35, and 36—owned by Mullins. Only Lot 33 is directly at issue in this case. Lot 33 is a parcel of land in Ashton Court, Village of Garrison Lake, Kent County, Delaware.

On or about March 7, 1995, Mullins transferred title of Lot 33 to P & A. The title transfer occurred so that P & A could use the property as collateral to secure financing to construct a home on the prop-erty. No money changed hands at the time of title transfer. Nor did Mullins receive a mortgage on Lot 33. Instead, the corporate debtor executed a note in the amount of $41,580 in favor of Mullins. P & A planned to build a speculation house on Lot 33, hopefully sell it to a buyer, and satisfy its debt to Mullins with the proceeds of the home sale.[2]

P & A failed to obtain financing to construct the home and abandoned the project without commencing any building. Title to Lot 33 remained in the name of P & A. P & A never made any payments on the note.

On or about August 16, 1995, P & A filed a corporate Chapter 7 bankruptcy petition. Title to Lot 33 was in the name of P & A at the time the company filed for bankruptcy. At no time prior to P & A's bankruptcy filing did Mullins record any type of instrument indicating he had any type of interest in Lot 33. Paul Paradise and his wife, Mary Ann Paradise, filed a joint personal Chapter 7 bankruptcy petition on September 26, 1995.

### B. Procedural History

On May 26, 1996, Mullins filed an adversary proceeding in the corporate Chapter 7 case of P & A in the Bankruptcy Court for the District of Delaware.[3] Mullins sought a court determination of the ownership of Lot 33 and equitable relief on the basis of resulting trust, constructive trust, and unjust enrichment theories.

On or about September 30, 1996, the Trustee filed a motion for summary judgement.[4] The Trustee argued that Lot 33 constituted property of the estate pursuant to 11 U.S.C. § 544(a), often referred to as

---

**2.** Mullins and P & A had previously entered into similar transactions regarding the other three lots.

**3.** Mullins also filed a complaint against Paul Paradise in the individual Chapter 7 case, alleging that Mullins transferred the title to Lot 35 (not the subject lot in these proceedings) Paradise in exchange for a promised later payment by Paradise to Mullins of $39,-

699.93, as reflected by a note. The payment was never made. In the complaint, Mullins asked the Bankruptcy Court to determine that the $39,699.93 debt of Paul Paradise was not dischargeable pursuant to 11 U.S.C. § 523. No. 95–1173.

**4.** Docket Item ("D.I.") 4–F.

the "strong arm clause" [5] of the Bankruptcy Code. The Trustee contended that, as a matter of law, his "strong arm" powers overrode any interest that Mullins might assert as a potential beneficiary of a resulting or constructive trust that the court might impose.[6]

Mullins' reply asserted, among other arguments, that 11 U.S.C. § 544(a)(3) does not apply to the transfer of real property to debtor P & A and that his asserted equitable trust prevails over the strong-arm provisions of § 544(a)(3).[7] After the original briefing was completed, the parties filed a stipulation that allowed for limited supplemental briefing.[8] This briefing informed the Bankruptcy Court that on November 10, 1997, Paul Paradise, the executive officer and operating officer of P & A, pled guilty to numerous charges, including a count of felony theft, in violation of 11 Del.C. § 841, in which the subject property was Lot 33.[9]

The Bankruptcy Court's summary judgment decision focused on two legal issues, assuming without deciding, that an equitable trust could be imposed on Lot 33 for Mullins benefit. The Bankruptcy Court sided with what it considered to be the majority position and concluded (1) that § 544(a)(3) applies to a transfer of property *to* a debtor and (2) that an equitable

trust does not defeat the trustee's "strong arm" powers under § 544(a)(3). The Bankruptcy Court therefore held that, even assuming it could impose an equitable trust on Lot 33 for the benefit of Mullins under state law, the Trustee's strong arm powers under § 544(a)(3) could preserve the property for the benefit of the estate. Mullins now appeals the Bankruptcy Court's grant of summary judgement to the Trustee.

## III. Standard of Review

■ Because the Bankruptcy Court decided this case as a matter of law, this Court exercises plenary review of the Bankruptcy Court's conclusions.[10] Summary judgment should be granted if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[11] In considering a motion for summary judgment, the Court views the record and inferences therefrom in the light most favorable to Mullins, the non-moving party.[12]

## IV. Discussion

■ Mullins asserts that he has an equitable interest in Lot 33, specifically, that the property is the subject of a constructive trust for his benefit.[13] Mullins

**5.** H.R.Rep. No. 95–595, at 370 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6326.

**6.** The Trustee made his legal arguments, "assuming, *arguendo*, that a resulting or constructive trust should be imposed upon Lot 33 for the benefit of [Mullins] ..." D.I. 4–F, at 7.

**7.** *See* D.I. 4–G.

**8.** *See* D.I. 4–H.

**9.** One count of the indictment to which Paradise pled guilty stated in pertinent part: "Paradise, on or about March 7, 1995 ... did take and exercise control over with intent to appropriate, property consisting of Lot No. 33, Ashton Court, Village of Garrison Lake, belonging to Robert Mullins, Jr." D.I. 8, Attachment. The indictment also included various counts of theft of money, building materials, and services from businesses and individuals

who appear likely to be among P & A's creditors. *Id.*

**10.** *See Meridian Bank v. Alten,* 958 F.2d 1226, 1229 (3d Cir.1992).

**11.** *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Showalter v. University of Pittsburgh Med. Ctr.,* 190 F.3d 231, 234 (3d Cir.1999); Fed.R.Civ.P. 56 (incorporated by Fed. R.Bankr.P. 7056).

**12.** *See Showalter,* 190 F.3d at 234.

**13.** Before the Bankruptcy Court, Mullins argued multiple theories regarding his asserted equitable interest in Lot 33. On appeal, Mullins' briefing focused on the constructive trust theory, although at oral argument, Mullins' counsel asserted that he was not abandoning the resulting trust theory. Because Mullins'

maintains that he, as the trust "beneficiary," i.e., the defrauded party of the constructive trust,[14] had an equitable ownership interest in the property, and that P & A had no equitable interest in Lot 33, but merely held legal title at the time it filed for bankruptcy. Assuming, as the Bankruptcy Court did, that imposition of a constructive trust on Lot 33 would be warranted under the facts of this case, the Court will focus on Mullins' two primary arguments on appeal.[15] First, Mullins argues the "strong arm" powers of a Chapter 7 Trustee under § 544 are limited to property transfers *from* the debtor and are not applicable to transfers of real property *to* a debtor as occurred in this case. Second, he contends that his equitable interest in Lot 33 is not *per se* defeated

---

briefing to this Court focused on constructive trust and because most of the relevant case law focuses on constructive trusts, the Court's analysis will focus its discussion on the relationship between constructive trusts and the bankruptcy code. Moreover, Mullins has made no argument that the Court's analysis should differ depending upon whether his asserted equitable interest was a constructive or resulting trust.

14. A constructive trust is imposed in equity to redress a wrong when "one party, by virtue of fraudulent, unfair or unconscionable conduct, is enriched at the expense of another to whom he or she owes some duty." *Hogg v. Walker*, 622 A.2d 648, 652 (Del.1993) (citing *Adams v. Jankouskas*, 452 A.2d 148, 152 (Del.1982); RESTATEMENT OF RESTITUTION § 160 cmt. d) A resulting trust is another form of equitable trust which "arises from the presumed intentions of the parties and upon the circumstances surrounding the particular transaction." *Adams*, 452 A.2d at 152.

15. Mullins raises three additional arguments on appeal, which the Court need only address briefly:

First, Mullins asserts he is entitled to equitable relief by imposition of a constructive trust under Delaware law. The Bankruptcy Court did not decide this issue because it assumed that, even if it could impose an equitable trust on Lot 33, the Trustee's strong arm powers could nonetheless preserve Lot 33 for the debtor's estate. Likewise, because the Court will affirm the Bankruptcy Court's grant of summary judgment to the Trustee, also assuming for purposes of the analysis that an equitable trust in favor of Mullins could be imposed on Lot 33, the Court will not address this issue.

Second, Mullins contends he is entitled to equitable relief under the doctrine of equitable subrogation, which operates to protect a creditor who, by mistake, inadvertence, or excusable neglect, failed to perfect a security interest, by subrogating his position permitting the creditor to assert its priority right against subsequent claimants. *See, e.g., Midatlantic National Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 200–01 (3d Cir.1994). Mullins raised this claim with the Bankruptcy Court for the first time in his supplemental brief, submitted pursuant to the parties' stipulation after Paul Paradise had pled guilty to theft of Lot 33, for the purpose of allowing the parties to inform the court of "recent events ... and disclosures." D.I. 4–H & 4–I. The Bankruptcy Court did not address Mullins equitable subrogation argument because it was not raised in the original briefing and the new argument was not contemplated by the parties' stipulation. D.I. 4–J, at 9. On appeal, Mullins makes a brief equitable subrogation argument on the facts but does not set forth any argument as to why the trial court erred in not considering the subrogation argument in the first instance on the ground that it was not properly raised. The Court finds no error in the Bankruptcy Court's conclusion that the argument was not properly raised below. *See* D.Del.L.R. 7.1.2(c), 7.1.3(c). Because the equitable subrogation argument was not properly raised in the Bankruptcy Court, the issue is not properly before this Court on appeal. *See In re Grand Union Co.*, 200 B.R. 101, 106 (D.Del.1996) (issues not presented in a bankruptcy court are not properly preserved for appeal).

Finally, Mullins argues he is entitled to other such relief as the court deems just, including, but not limited to, an order of non-dischargeability against the principal of P & A, Paul Paradise. Mullins' complaint in this case did not include a claim for non-dischargeability pursuant to 11 U.S.C. § 523. In a separate complaint, Mullins filed a non-dischargeability action against Paul Paradise in his individual Chapter 7 case. No. 95–1173(HSB). Because Mullins did not raise the non-dischargeability issue with the Bankruptcy Court in this case, he cannot raise it with this Court on appeal. *See In re Grand Union Co.*, 200 B.R. at 106. Moreover, as Mullins appears to have conceded at oral argument, his non-dischargeability claim is moot in this action because corporations do not receive discharge of debt in Chapter 7 bankruptcy. *See* 11 U.S.C. §§ 523(a), 727(a)(1).

by the strong arm powers of the Trustee provided under § 544(a).

■ At issue generally in this appeal is the relationship between the law of equitable trusts and the Bankruptcy Code's provision for strong arm powers in the Trustee pursuant to 11 U.S.C. § 544(a). Courts have taken varying approaches to this general issue,[16] which has been viewed by some courts and commentators as creating a "confrontation"[17] or "collision"[18] of two recognized policy considerations in bankruptcy law: (1) the policy of ratable distribution among similarly situated creditors;[19] and (2) the policy that bankruptcy law "does not create substantive property rights"[20] but instead recognizes property rights created by nonbankruptcy law, typically state law.[21]

Before addressing the precise issues raised on appeal, it is necessary to set forth the statutory provisions at issue. Section 541(a) defines "[p]roperty of the estate" under the Bankruptcy Code to include "all the following property, wherever located and by whomever held:"

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the date of the commencement of the case....

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.[22]

Although this definition of property is broad, the Bankruptcy Code exempts certain specific interests from the definition of estate property. In particular, Section 541(d) provides:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's

---

**16.** *See, e.g.,* Robert J. Keach, *The Continued Unsettled State of Constructive Trusts in Bankruptcy: Of Butner, Federal Interests and the Need for Uniformity,* 103 Com.L.J. 411, 412–13 (1998) (hereinafter "Keach"); Jeffrey Davis, *Equitable Liens and Constructive Trusts in Bankruptcy: Judicial Values and the Limits of Bankruptcy Distribution Policy,* 41 Fla.L.Rev. 1, 3–20 (1989) (both stating there is uncertainty in the case law resulting from provisions of the bankruptcy statute that appear to conflict and which provide little guidance regarding how to resolve such conflict).

**17.** *Emerson v. Maples (In re Mark Benskin & Co.),* 161 B.R. 644, 647 (Bankr.W.D.Tenn. 1993).

**18.** *In re Mill Concepts Corp.,* 123 B.R. 938, 939 (Bankr.D.Mass.1991).

**19.** *See, e.g., Begier v. IRS,* 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (policy of ratable distribution is "a central policy of the Bankruptcy Code"); Lawrence P. King, 5 Collier on Bankruptcy ¶ 541.01, at 541–6.1 (15th ed. rev.1999).

**20.** *Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc. (In re Columbia Gas*

*Sys., Inc.),* 997 F.2d 1039, 1066 (3d Cir.1993) (Nygaard, J., concurring in part, dissenting in part); *see also Osborn v. Durant Bank & Tr. Co. (In re Osborn),* 24 F.3d 1199, 1203 (10th Cir.1994).

**21.** *See* Keach, 103 Com.L.J. at 412–13; *In re CRS Steam, Inc.,* 225 B.R. 833, 839 & n. 29 (Bankr.D.Mass.1998) (citing voluminous case law). For different approaches to resolving the conflicting policy considerations, see Gregg C. Gumbert, *Comment: The Trustee as a Bona Fide Purchaser of Real Property in Bankruptcy: Making Sense of Section 544(a)(3),* 15 Bank.Dev.J. 121 (1999) (hereinafter "Gumbert"); Andrew Kull, *Restitution in Bankruptcy: Reclamation and Constructive Trust,* 72 Am.Bankr.L.J. 265 (1998); Carlos J. Cuevas, *Bankruptcy Code Section 544(a) and Constructive Trusts: The Trustee's Strong Arm Powers Should Prevail,* 21 Seton Hall L.Rev. 678 (1991); Emily L. Sherwin, *Constructive Trusts in Bankruptcy,* 1989 U.Ill.L.Rev. 297 (1989); Thomas H. Jackson, *Statutory Liens and Constructive Trusts in Bankruptcy: Undoing the Confusion,* 61 Am.Bankr.L.J. 287 (1987).

**22.** 11 U.S.C. § 541(a).

legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.[23]

Section 544(a), which sets forth the Trustee's strong arm powers, provides in pertinent part:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of the debtor or any obligation incurred by the debtor that is voidable by—

. . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.[24]

"In other words, as of the date of the [bankruptcy] petition's filing, . . . § 544(a)(3) confers upon the trustee the rights of a bona fide purchaser when, as in this case, real property is at issue." [25]

Numerous Courts and commentators have noted a tension between the text of §§ 541(a), 541(d), and 544(a).[26] "[T]hese sections are not always easily reconciled because § 541(d) excludes certain equita-

ble interests from the estate of a bankrupt while § 544(a) permits the trustee to bring certain tainted property into the control of the estate." [27] As a pertinent example for this case, where the debtor holds particular real property in constructive trust for another as a result of fraud, § 541(d) would exclude the constructive trust beneficiary's equitable interest in the property from the estate.[28] However, in spite of § 541(d), § 544(a) appears to permit the trustee to bring constructive trust property into the estate through his strong arm powers as a hypothetical bona fide purchaser since a constructive trust beneficiary's interest in real property is an unrecorded interest, which would be inferior to the interest of a bona fide purchaser of such property.[29]

The Third Circuit appellate court has not addressed the issue of whether, or under what circumstances, the Trustee, standing in the position of a bona fide purchaser of real property under section 544(a)(3), can exercise his or her strong arm powers to pull into the estate property that appears to be excluded from the definition of estate property under section 541(d). There is a split in authority on this issue.[30] The minority view follows the reasoning of *In re Quality Holstein Leasing*[31] and concludes that, as a general rule, § 541(d) prevails over the trustee's strong-

---

**23.** *Id.* § 541(d).

**24.** *Id.* § 544(a).

**25.** *In re Bridge*, 18 F.3d at 199.

**26.** *See, e.g.,* Alan G. Skutt, *Annotation: Power of Trustee in Bankruptcy to Defeat Rights of Beneficiary of Constructive Trust Under § 544(a) of Bankruptcy Code (11 U.S.C. § 544(a)),* 96 A.L.R.Fed. 100 (1990 & 1998 Supp.) and cases cited therein; *In re General Coffee Corp.,* 828 F.2d 699, 704 (11th Cir. 1987). *But see Belisle v. Plunkett,* 877 F.2d 512, 515 (7th Cir.1989) (concluding there is no "conflict" in need of resolution: "Section 541(d) does not have anything to say about the effects of § 544(a)(3). It forbids including property in the debtor's estate 'under subsection (a) of this section' and does not address

whether property may be included under some other part of the Code [in particular, section 544(a) ].") In 1984, Congress changed the language of § 541(d) to substitute "under subsection (a)(1) or (2) of this section" for "under subsection (a) of this section;" however, this change would not affect the *Belisle* court's analysis. *See id.* at 514 n. 3

**27.** *In re General Coffee Corp.,* 828 F.2d at 704.

**28.** *See id.*

**29.** *See id.* at 704–05 (citations omitted).

**30.** *See* 5 Colliers on Bankruptcy ¶ 544.04 (15th ed. rev.1999); *see also* 96 A.L.R.Fed. 100 (1990 & 1998 Supp.).

**31.** 752 F.2d 1009 (5th Cir.1985).

arm powers under § 544(a).[32] The reasoning employed is that a trustee's strong arm powers cannot override constructive trust interests because the debtor has only title but no equity in the constructive trust property and therefore the property is excluded from the estate under § 541(d).[33]

The majority view has not embraced this reasoning and instead has held that property not part of the debtor's estate under § 541(d) may still be brought into the estate under § 544(a).[34] The Court adopts the majority view as the better reasoned approach. In particular, *In re Quality Holstein Leasing* construed § 541(d) prior to the 1984 amendments this section. The reasoning of *In re Quality Holstein Leasing* was more plausible regarding the pre-amendment version of § 541(d) which stated that trust property became property of the estate "under subsection (a)" only to the extent of the debtor's legal title. Such reasoning was considerably weakened by the 1984 amendments that changed these words to "under subsection (a)(1) or (2)."[35] Under current law, § 541(d)'s limitations apply only to property brought into the estate under subsection (a)(1) or (2) of that section and, by inference, not to subsections (a)(3) or (4).[36] Subsections 541(a)(3) and (a)(4) allow the trustee to bring into the bankruptcy estate property that the debtor did not own at the commencement of the bankruptcy case but that the trustee may recover for the benefit of creditors under various strong arm powers, including § 544's strong arm powers.[37] Thus, §§ 541(d) and 544(a) should be construed to operate independently of one another.[38]

**32.** *See id.* at 1013; Keach, 103 COMM.L.J. at 425–26; 96 A.L.R.FED. 100 § 3 and cases cited therein.

**33.** *See In re Quality Holstein Leasing,* 752 F.2d at 1013–14; *see also id.* at 1013 ("[A]lthough [§ 544(a)'s strong arm] powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own." (footnote omitted)).

**34.** *See, e.g., XL/Datacomp v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443, 1449 (6th Cir.1994); *In re Seaway Express Corp.,* 912 F.2d 1125, 1128–30 (9th Cir.1990); *In re Tleel,* 876 F.2d 769, 771–72 (9th Cir.1989); *Patel v. Rupp,* 195 B.R. 779, 782 (D.Utah 1996); *In re Morken,* 182 B.R. 1007 (Bankr. D.Minn.1995); *In re Ebel,* 144 B.R. 510, 514 (D.Colo.1992); *In re Cascade Oil, Inc.,* 65 B.R. 35, 42 (Bankr.D.Kan.1986). *See also Belisle,* 877 F.2d at 516 ("With all respect to the Fifth Circuit, we believe that allowing the estate to 'benefit from property that the debtor did not own' is exactly what the strong-arm powers are about: they give the trustee the status of bona fide purchaser for value, so that the estate ... gets what the debtor could convey under local law rather than only what the debtor owned under local law.").

**35.** *See, e.g., In re Seaway Express,* 912 F.2d at 1127–28; David Gray Carlson, *The Trustee's Strong Arm Power Under the Bankruptcy Code,* 43 S.C.L.REV. 841, 930 (1992) (hereinafter "Carlson") (citing Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L.

No. 98–353, sec., 456(c), § 541(d), 98 Stat. 333, 376) (codified at 11 U.S.C. § 541(d)). The relevant provision now reads, in pertinent part:

"Property in which the debtor holds ... only legal title and not an equitable interest ... becomes property of the estate *under subsection (a)(1) or (2) of this section* only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold".

11 U.S.C. § 541(d) (emphasis added).

**36.** *See, e.g., In re Seaway Express,* 912 F.2d at 1128; Carlson, 43 S.C.LAW.REV at 930.

**37.** *See, e.g., In re Seaway Express,* 912 F.2d at 1128; *Mayer v. United States (In re Reasonover),* 236 B.R. 219, 226 (Bankr.E.D.Va.1999); *In re Cascade Oil Co., Inc.,* 65 B.R. at 39. *See also, e.g.,* Keach, 103 COM.L.J. at 426 (stating this is the majority view); 96 A.L.R.FED. 100 §§ 5, 6. In particular, § 541(a)(3) provides that property of the estate includes "[a]ny interest in property that the trustee recovers under section ... 550...." 11 U.S.C. § 541(a)(3). Section 550, in turn, allows the Trustee to recover property for the benefit of the estate under various sections of the Code, including § 544's strong arm powers. *See id.* § 550(a).

**38.** *See, e.g., In re De Lauro,* 207 B.R. 412, 416 (Bankr.D.N.J.1997) (Stating that, while § 541(d) may exclude from the estate property subject to constructive trust, "it is neces-

It follows § 541(d) should not be construed to limit the Trustee's ability to bring property into the estate through the "strong-arm" powers of § 544, and, in particular, through the Trustee's rights as a bona fide purchaser of real property.[39]

### A. Whether the strong arm powers of the Chapter 7 Trustee are limited to property transferred *from* the debtor and not applicable to property transferred *to* the debtor

 Mullins transferred Lot 33 to P & A. He argues on appeal, as he did to the Bankruptcy Court, that Trustee's strong arm powers under 11 U.S.C. § 544(a), apply only to instances where real property was transferred *from* the estate and not to real property transferred *to* the estate. In other words, Mullins asserts that, at least with regard to § 544(a)(3), the statute only provides the Trustee with avoidance powers. There are no Third Circuit Court of Appeals decisions that address this issue, and there is a split of authority in other jurisdictions.[40]

The "majority rule" adopted by several Circuit Courts of Appeal, is that the statute confers the status of bona fide purchaser upon the trustee for all purposes, regardless of whether a transfer to or from the debtor has taken place.[41] As explicated by the Seventh Circuit Court of Appeals in *Belisle v. Plunkett:*

> Nothing in the text or function of § 544(a)(3) makes the force of this claim turn on whether [the debtor] once owned the leasehold and then sold it to the partnerships ... or whether, instead, [the debtor] acquired the leasehold through the partnerships.... Section 554(a)(3) allows the trustee to have a bona fide purchaser's rights *or* avoid a transfer, so a "transfer" by the debtor cannot be a necessary condition of the strong-arm power. The statute mentions "transfer" only in the sense of the *hypothetical* transfer that measures the trustee's rights: if a hypothetical bona fide transferee from the debtor would come ahead of the "true" owner's rights, then the trustee takes ahead of the true owner.[42]

Further, as stated by the Ninth Circuit Court of Appeals:

> Congress granted the bankruptcy trustee enhanced powers over real property owned by the debtor at the commencement of the case and *not* transferred. Under 11 U.S.C. § 544(a)(3), the trustee is granted, *in addition to* the avoidance powers, "the rights and powers of ... a

---

sary to consider the effect of the trustee's strong-arm powers since the bankruptcy estate may be augmented by property recovered by a trustee pursuant to the [ ] powers found in §§ 544 through 551." (citations omitted)).

**39.** In *Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., Inc.,* 960 F.2d 366 (3d Cir. 1992), the Third Circuit Court of Appeals held that a contractor, a Chapter 11 debtor-in-possession, held monies received from state and municipal agencies subject to a statutory trust under New Jersey law in favor of laborers and materialmen, and that such funds were not considered part of the estate under § 541(d). In the course of the opinion, the Third Circuit Appellate Court stated the following broad dicta: "Section 541(d)'s limitation on the scope of the bankruptcy estate prevails over the trustee's strong-arm powers under section 544 of the Code." *Id.* at 372 n. 2 (citing *In re Quality Holstein Leasing,* 752 F.2d at 1013). Because *Universal Bonding*

*Ins. Co.* concerned a statutory, rather than a constructive, trust and did not raise issues involving a trustee's § 544 strong arm powers, the Court does not consider this dicta to be determinative to the disposition of this case.

**40.** *See, e.g.,* Gumbert, 15 Bank.Dev.J. at 126–135 and cases cited therein.

**41.** *See, e.g., In re Seaway Express,* 912 F.2d at 1129–30 ("Although the section empowers the trustee to avoid transfers, by its terms it also applies if no transfer has taken place".); *Belisle,* 877 F.2d at 515; *In re Quality Holstein Leasing,* 752 F.2d at 1012–13 (The "strong-arm provisions confer on the trustee well-nigh ideal lienholder status, allowing him to retrieve *or retain* property the creditors otherwise could remove from the estate or keep." (emphasis added)).

**42.** 877 F.2d at 515 (emphasis in original).

bona fide purchaser of real property . . . from the debtor."[43]

Moreover, numerous other cases in which courts have held that a trustee may use Section 544(a)'s strong arm powers to defeat an inchoate claim of an equitable interest in property held by the debtor at the commencement of the case implicitly, if not explicitly, reject the argument that a trustee's strong arm powers apply only to transfers from the debtor.[44]

Mullins urges this court to adopt the minority position, expressed by several bankruptcy courts, that the language of § 544(a) compels an interpretation that the Trustee's strong arm powers only reach property transferred from the debtor.[45] The reasoning of the cases adhering to the minority position is based on an attempt to parse the text of § 544(a)(3).[46] Through such parsing, these cases have concluded that the phrase "such transfer" in subsection (a)(3) can only refer to the "transfer of property of the debtor" in subsection (a) and that the phrase "rights and powers" in subsection (a) does not apply to subsection (a)(3),[47] relating to a trustee's bona fide purchaser powers.[48] Based on this minority interpretation of the statute, argues Mullins, because there was no transfer by the debtor P & A in this case, rather

Mullins transferred Lot 33 to the debtor, the Trustee's § 544(a)(3) strong arm powers could not preserve Lot 33 for the estate.

While recognizing that the text of § 544(a)(3) is not a model of clarity, the Court finds the majority approach to be the better reasoned. As one court has aptly stated, the minority approach "does considerable linguistic and grammatical violence to the statute."[49]

[T]he literal text of § 544(a)(3) not only does not limit the trustee's avoidance powers to transfers *"by"* the debtor, it is not even restricted to "transfers." Rather, what the statute says is that the trustee has "the *rights and powers of,* or may avoid any transfer of property of the debtor . . . that is voidable by—. . . a bona fide purchaser or real property (emphasis added)." Because this preamble is phrased in the disjunctive, the trustee may exercise any "rights and powers" of a bona fide purchaser even in the absence of a transfer. . . . Because the phrase "rights and powers" in § 544(a) is separated by commas and the use of the conjunction "or" from the phrase "may avoid a transfer," a transfer from the debtor cannot be a necessary condition of the exercise of the trustee's strong arm power.[50]

---

**43.** 912 F.2d at 1128 (emphasis in original) (footnote omitted).

**44.** *See, e.g., In re Omegas Group, Inc.,* 16 F.3d at 1449; *In re Tleel,* 876 F.2d at 771–72; *Patel v. Rupp,* 195 B.R. at 782; *In re Morken,* 182 B.R. 1007; *In re Ebell,* 144 B.R. at 514; *In re Cascade Oil, Inc.,* 65 B.R. at 42. *See also Mills v. Brown (In re Brown),* 182 B.R. 778, 781 (Bankr.E.D.Tenn.1995) (citing cases).

**45.** *See, e.g., In re Brown,* 182 B.R. at 781; *In re Mill Concepts Corp.,* 123 B.R. 938 (Bankr. D.Mass.1991). *See also generally* Gumbert, 15 Bank.Dev.J. 121 (advocating the minority approach).

**46.** The most diligent effort is that of Judge Queenan. *See, e.g., In re Mill Concepts Corp.,* 123 B.R. 938 (Bankr.D.Mass.1991).

**47.** Section 544(a) states in relevant part:

The trustee shall have, as of the commencement of the case, and without regard to any

knowledge of the trustee or of any creditor, *the rights and powers of,* or *may avoid any transfer of the debtor* or any obligation incurred by the debtor that is voidable by— . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits *such transfer* to be perfected, that obtains the status of bona fide purchaser and has perfected *such transfer* at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a) (emphasis added).

**48.** *See In re Brown,* 182 B.R. at 781–82; *In re Mill Concepts,* 123 B.R. at 941.

**49.** *In re Reasonover,* 236 B.R. at 229.

**50.** *Id.* at 228–29 (citing *Belisle,* 877 F.2d at 515; *In re Seaway Express Corp.,* 912 F.2d at 1129–30).

The minority approach advanced by Mullins would write out the phrase "rights and powers of ..." from § 544(a) with regard to subsection (3).[51] Moreover, the more obvious reference for the phrase "such transfer" in subsection (a)(3) is the purchase of property by the hypothetical bona fide purchaser.[52] Finding the reasoning of the majority of courts on this issue more persuasive, the Court concludes that the Trustee's § 544(a)(3) powers apply to cases such as this, where there has been no transfer of real property from the debtor.

## B. Whether Mullins' equitable interest in Lot 33 succumbs to the Trustee's strong arm powers under section 544

■ Mullins argues that, even assuming the Trustee can bring Lot 33 into the estate through section 544, his equitable interest in Lot 33 does not succumb *per se* to the Trustee's strong arm powers. The primary case relied upon by the Bankruptcy Court in granting summary judgment was *In re Omegas Group, Inc.*[53] In response to an argument that section 541(d) excludes property subject to an equitable trust from the bankruptcy estate, the *Omegas* court stated that an equitable trust is a judicially-created remedy that does not exist until a claimant obtains such remedy from a court.[54] Therefore, the *Omegas* court concluded, a claimant cannot represent that he was a beneficiary of an equitable trust held by the debtor unless a court has already impressed an equitable trust at the time of the bankruptcy peti-

tion.[55] The court further concluded that the Bankruptcy Code's system of equitable distribution is paramount to the bankruptcy court's creation of an equitable trust, stating:

> Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor. "Ratable distribution among all creditors" justifies the Code's placement of the trustee in the position of a first-in-line judgment creditor and bona fide purchaser for value, empowered to avoid certain competing interests ... so as to maximize the value of the estate.... The Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern and entitlement to shares of the estate secondary. Imposing a constructive trust on the debtor's estate impermissibly subordinates this primary concern to a single claim of entitlement.[56]

Thus, *Omegas* stands for the proposition that "the bankruptcy policy of ratable distribution trumps state law on constructive trusts."[57]

■ The *Omegas* decision is appealing in that it applies a bright line rule to resolve the confusion over the applicability of constructive trusts to bankruptcy law. Not surprisingly, it has met with approval by some bankruptcy courts.[58] However, the Sixth Circuit panel's blanket statement in *Omegas,* that constructive trusts come

51. *See id.* at 229; *see also* Carlson, 43 S.C.L.Rev. at 933.

52. *See In re Reasonover,* 236 B.R. at 229.

53. 16 F.3d 1443 (6th Cir.1994).

54. *Id.* at 1449. The concurring opinion in the case also states that those cases which have held that a constructive trust may overcome the trustee's strong arm powers are cases in which those trust came into being pre-petition. *See id.* at 1454 (Guy, J., concurring).

55. *Id.* at 1449, 1451.

56. *Id.* at 1452–53 (footnotes omitted).

57. *In re Dow Corning Corp.,* 192 B.R. 428, 442 (Bankr.E.D.Mich.1996).

58. *See, e.g., Fibre Form Corp. v. Slamin (In re Nova Tool & Eng'g, Inc.),* 228 B.R. 678 (Bankr.N.D.Ind.1998); *Cooper v. First Citizens Bank (In re Jones),* 186 B.R. 71, 78 (Bankr.W.D.Ky.1995); *In re Foos,* 183 B.R. 149, 154 (Bankr.N.D.Ill.1995); *In re Morken,* 182 B.R. at 1022–23.

into existence at the time they are expressly recognized by a court, made without citation to any case authority, runs counter to the teaching of Third Circuit and Supreme Court law, that courts must look to state law to determine whether and when constructive trusts attach in bankruptcy law.[59] The majority state law rule is contrary to that announced by the *Omegas* court; that is, the majority rule is that constructive trusts attach or relate back to the time of the unlawful act that led to the creation of the trust.[60] While the Delaware Supreme Court has described the constructive trust as an "equitable remedy,"[61] that Court has also stated that "the duty to transfer the property relates back to the date of the wrongful act that created the constructive trust."[62] Thus, Delaware law appears to be in accord with the majority rule.

▮ In sum, to the extent the Bankruptcy Court's holding relied upon *Omegas* for the proposition that a constructive trust does not arise until it is determined to exist in a judicial proceeding or that, as a general rule, the policy of ratable distribution necessarily trumps state equitable trust law, it was in error. However, that does not necessarily change the outcome here. As stated *supra*, even though property may be excluded from the debtor's estate under § 541(d) where a third party is entitled to a constructive trust on such property, such property nonetheless is subject to being brought within the estate under the Trustee's strong arm powers when evaluated under the appropriate law. The Court turns to the issue of what law defines the scope of these powers.

▮ "[A]lthough the trustee's strong arm powers arise under federal law, the scope of these [ ] powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing."[63] "The incorporation of state law in this regard establishes that '[w]herever under the applicable law such a creditor or bona fide purchaser might prevail over prior transfers, liens, encumbrances or the like, the trustee will also likely prevail.' "[64] It follows the Court must look to Delaware property law to determine the scope of the Trustee's powers as a hypothetical bona fide purchaser of real property under section 544(a)(3).

**59.** *See, e.g., Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."); *City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 95 (3d Cir. 1994) (citations omitted); *Universal Bonding Ins. Co.,* 960 F.2d at 372 (The court's holding "respects the traditional role of the states as creators and definers of the property interests to which the bankruptcy law applies.").

**60.** *See e.g., In re Leitner,* 236 B.R. 420, 424 & n. 12 (Bankr.D.Kan.1999) ("[U]nder the majority state law rule, a constructive trust arises at the time of the occurrence of the events giving rise to the duty to reconvey the property, not at the date of the final judgement declaring the trust as *Omegas* held." (citing numerous state cases)); *In re Aultman,* 223 B.R. 481, 483 (Bankr.W.D.Pa.1998) (concluding that Pennsylvania adheres to the majority view that constructive trusts arise at the time of the fraud or other wrong which constitutes the basis for imposing a constructive trust); *In re General Coffee Corp.,* 828 F.2d at 702–03 (holding that Florida adheres to the majority view that constructive trusts exist from the moment of the fraudulent act giving rise to such trust, generally long before a court grants equitable relief in such form).

**61.** *Hogg,* 622 A.2d at 652.

**62.** *Id.*

**63.** *In re Bridge,* 18 F.3d at 200 (citing *McCannon v. Marston,* 679 F.2d 13, 14 (3d Cir.1982) (applying Pennsylvania law to determine whether trustee's strong arm power as a bona fide purchaser under § 544(a)(3) could avoid the unrecorded equitable interest of a purchaser in clear and open possession of the subject property); 4 Lawrence P. King, Collier on Bankruptcy ¶ 544.02, at 544–5, 544–14 (15th ed.1993) (the extent of the trustee's strong arm powers is defined by the law of the situs where the subject property is located)).

**64.** *Id.* (citing 4 Collier ¶ 544.01, at 544–3).

■ It does not appear to be disputed by the parties that under Delaware law, a bona fide purchaser without notice of any asserted equitable interest in Lot 33 as of the bankruptcy petition date would take title free of a constructive trust claim.[65] At the time P & A filed its Chapter 7 petition, there was nothing of record that would have notified the Trustee that Mullins had an interest in Lot 33.[66] Therefore, because § 544(a)(3) provides the Trustee with the rights and powers of a bona fide purchaser, the Trustee holds Lot 33 for the benefit of the estate, free from any asserted constructive trust interest of Mullins.

Mullins argues that, even assuming Lot 33 is brought into the estate through the Trustee's section 544 powers, "the [T]rustee is not permitted to do so with complete disregard for injustice and unjust enrichment."[67] He asserts that "[o]nce the grounds to impose a constructive trust have been demonstrated, the burden shifts to the trustee to establish that it would be *inequitable* as a matter of federal bankruptcy law to impose a constructive trust,"[68] and that "[t]he trustee must demonstrate that the ratable distribution policy of the bankruptcy [statute] outweighs

the beneficiaries [sic] right in the property."[69] However, because the cases cited by appellant to support this argument do not involve a trustee's powers as a bona fide purchaser under § 554(a)(3), in particular, or under the strong arm powers under section 544 generally, and in fact cite to other cases that are contrary to Mullins' position here,[70] they do not advance Mullins' cause.

## V. Conclusion

For the reasons stated, even if imposition of a constructive trust on Lot 33 for the benefit of Mullins was warranted, the Trustee's exercise of the rights and powers of a bona fide purchasers of Lot 33, pursuant to the strong arm powers of 11 U.S.C. § 544(a)(3) preserves that property for the benefit of the estate. Therefore, the Bankruptcy Court's grant of summary judgment in favor of the Trustee will be AFFIRMED.

---

65. *See, e.g., Vredenburgh v. Jones*, 349 A.2d 22, 40 (Del.Ch.1975) (bona fide purchaser without notice acquired interest in stock free of constructive trust). *See also Hirsch v. Travelers Ins. Co.*, 134 N.J.Super. 466, 341 A.2d 691, 693 (1975) (in case involving two innocent parties, where recipient of wrongful transfer is a bona fide purchaser for value, the bona fide purchaser will prevail over party seeking to impose constructive trust). *See also, e.g.*, Sherwin, 1989 U.Ill.L.Rev. at 304; RESTATEMENT (FIRST) OF RESTITUTION §§ 168, 172 (1937); A.W. Scott & W.F. Fratcher, 5 SCOTT ON TRUSTS § 474 (4th ed.1989) (all indicating that, vis-a-vis third parties, a constructive trust on real property is cut off by a bona fide purchaser).

66. *Cf. In re Aultman*, 223 B.R. at 486 (holding that trustee's § 554(a)(3) strong arm powers could not avoid a constructive trust where lis pendens against debtor's realty was filed and indexed prior to bankruptcy petition, putting any bona fide purchaser on constructive notice of the asserted equitable interest).

67. D.I. 8 (Opening Brief), at 11.

68. *Id.* at 11–12 (citing *Taylor Assocs. v. Diamant (In re Advent Management Corp.)*, 178 B.R. 480, 490 (9th Cir. BAP 1995)) (emphasis added) (citing *In Re Unicom Computer Corp.*, 13 F.3d 321, 325 (9th Cir.1994)).

69. *Id.* at 12 (citing *In re Golden Triangle Capital, Inc.*, 171 B.R. 79, 82 (9th Cir. BAP 1994)).

70. *See In re Advent Management Corp.*, 178 B.R. at 489 (case involving sections 547 and 548 of the Bankruptcy Code and stating "... a trustee in bankruptcy may avoid a constructive trust in real property through the exercise of the strong arm powers of section 544(a)(3)." (citing *In re Seaway Express Corp.*, 912 F.2d at 1127–29; *In re Tleel*, 876 F.2d at 771–74)); *In re Golden Triangle Capital, Inc.*, 171 B.R. 79 (addressing issue of whether funds were included in property of the estate under section 541).